**REO INDUSTRIES, INC.,**
**Plaintiff-Appellant,**

v.

**PANGAEA RESOURCE CORP.,**
**Pangaea Petroleum, Ltd; et al., Defendants-Appellees.**

No. 85–1601.

United States Court of Appeals,
Fifth Circuit.

Sept. 26, 1986.

Marshall M. Searcy, Rain, Harrell, Emery, Young & Doke, Jerry K. Warren, Dallas, Tex., for plaintiff-appellant.

Richard F. Brown, Underwood, Wilson, Berry, Stfin & Johnson, Harlow Sprouse, Sharon E. White, Amarillo, Tex., for Pangaea, et al.

Wayne P. Sturdivant, Robert D. Kimball, Amarillo, Tex., for Cancarib Oil, et al.

Before CLARK, Chief Judge, RUBIN and GARZA, Circuit Judges.

GARZA, Circuit Judge:

This diversity action involves the wrongful appropriation of trade secrets under Texas law. The plaintiff, Reo Industries,

Inc. ("Reo") appeals from the district court's denial of its motion seeking a constructive trust, subsequent to the jury's finding that Reo had incurred no monetary damages arising from the conduct of defendants Pangaea Resource Corp., Pangaea Petroleum Ltd., and Pangaea Petroleum Inc. (collectively "Pangaea"). Reo's sole contention on appeal is that the district court erred in denying Reo's Motion for Judgment to impose a constructive trust in light of the jury's findings in Reo's favor on certain special issues. We affirm, finding that, pursuant to Rule 49(a) of the Federal Rules of Civil Procedure, Reo waived its right to a jury verdict on the issue of the extent of the benefit Pangaea had received from the unlawful use of the trade secret. Consequently, because Rule 49(a) is a self-executing rule, the trial court is deemed to have made a finding on the issue in accordance with the judgment rendered on the special verdict.

The facts show that in the spring of 1981, Reo, through its president, W.R. Edwards, Jr., learned of the potential availability of a large oil and casinghead gas lease known as the Bivins Ranch Prospect.[1] The circumstances regarding the availability of the Bivins Ranch were not generally known within the oil and gas industry. Reo contacted the Bivins family and informed them that it was interested in negotiating a lease if negotiations with the existing lessee, Colorado Gas Company, could not be completed. Thereafter, the Bivins family informed Reo that it would consider an offer by Reo to lease the subject prospect. Reo compiled extensive geological, legal, technical and economic data in order to present a viable offer for the prospect.

As Reo pursued its negotiations with the Bivins family, it simultaneously initiated a search for joint venture participants to aid in the financing and to share in the risk of the project. On October 9, 1981, Edwards met with George Paulus, vice-president of Pangaea, at Pangaea's Denver office. Ed-

wards discussed the prospect with Paulus and gave him several items of information, including a road map of the Texas Panhandle, a legal description of the property, four pages of information from Dwight's Energy Data, and a purported authority for expenditures prepared by another oil company for a well located on other lands. Prior to the date of this meeting, Reo and Pangaea had never engaged in business dealings and, further, Pangaea had no significant contacts with the Texas Panhandle. On the same day as the Denver meeting, October 9, Reo made its first formal proposal to the Bivins family for the acquisition of the lease.

On October 15 and 16 of 1981, a second meeting was conducted between the representatives of both parties at Pangaea's home office in Calgary, Alberta, Canada. Reo revealed more information about the prospect at this meeting, including geological studies, economic projections and well logs. At the conclusion of these meetings the parties orally agreed to the formation of a joint venture. Reo agreed to prepare a written agreement incorporating the items discussed in Calgary but, even though Reo continued to keep Pangaea posted about developments with the Bivins family, it never drafted an agreement. On December 11, Reo representatives met with members of the Bivins family to discuss Reo's October 9 offer. In January of 1982, Reo and the Bivins family exchanged drafts of proposed final leases.

Although the parties' statements conflict as to what occurred shortly thereafter, it is apparent that, as of February 4, the business terms of the joint venture had been altered and the parties chose to terminate any further negotiations. Furthermore, in early March, the previously negotiated lease terms between Reo and the Bivins family had been altered, apparently to the detriment of the Bivins family, and the family refused to renegotiate the terms with Reo. Prior to the falling out between

1. The Bivins Ranch Prospect refers to a 27,000 acre oil and casinghead gas development prospect, situated in the Red Cave Formation under-

lying a large ranch owned by the Bivins family in Moore and Potter Counties, Texas.

Reo and the Bivins family, Pangaea had contacted the Bivins family to inquire into the status of its negotiations with Reo. By letter dated March 10, 1982, the Bivins family informed Pangaea that it had terminated negotiations with Reo. By May of 1982, Pangaea had acquired the Bivins Ranch lease. Shortly thereafter, Pangaea sold a portion of its interest in the lease to several other oil companies who were also defendants at trial.[2]

Reo asserted the following causes of action against Pangaea in its First Amended Complaint: breach of contract; misappropriation of trade secrets; fraud; violation of confidential relationship; breach of fiduciary relationship; implied contract; and interference with a prospective contractual relationship. At the close of the evidence, only the issues of misappropriation of trade secrets and interference with a prospective contractual relationship were submitted to the jury. After twelve days of trial the jury answered five special issues.[3] Reo did not object to the court's special issues and did not request any additional instructions or issues to be submitted to the jury.

On the issue of misappropriation of trade secrets the jury found that the information disclosed by Reo to Pangaea constituted a trade secret, that Pangaea used the trade secret for its own benefit, and that Pangaea's use of the trade secret constituted a breach of confidence imposed on them by Reo. However, the jury found that Reo was not damaged by Pangaea's use of the trade secret. On the issue of interference with a prospective contractual relationship, the jury found that there was not a reasonable probability that Reo would have entered into a contractual relationship with the Bivins family. Based on the jury's findings to Special Issues Nos. 1, 2 and 3, Reo filed a Motion for Judgment on August 29, 1985, seeking the imposition of a constructive trust in its favor on (1) the proceeds from Pangaea's sale of fractional interests in the Bivins lease, and (2) all or a portion of Pangaea's leasehold interest in the lease. By order entered September 5, 1985, the trial court denied Reo's Motion for Judgment and entered judgment in Pangaea's favor. From this order Reo now appeals.

Rule 49(a) of the Federal Rules of Civil Procedure:[4] authorizes a special verdict in

2. Reo filed its First Amended Complaint against Pangaea Resource Corp., Pangaea Petroleum Ltd., Pangaea Petroleum Inc., Point Farm, N.V., Fortress Oil Inc., Pangaea–117 Oil & Gas Co., Cancarib Oil Corp., N.V., Guthrie Energy Inc., and Kinross Petroleum Inc. At the close of the plaintiff's case, Point Farm, N.V., Fortress Oil Inc., Cancarib Oil Corp., N.V., Guthrie Energy Inc., and Kinross Petroleum Inc., moved for and were granted a directed verdict. At the close of the defendants' case, Pangaea–117 Oil & Gas Co., moved for and was granted a directed verdict. Reo does not appeal the directed verdicts or the judgment entered with regard to these defendants.

3. The jury was asked, and it answered, the following special issues:
Special Issue No. 1: Do you find from a prepondernace of the evidence that the information disclosed by Reo to the defendants in October 1981 was a trade secret?
Answer "yes" or "no."
Answer: Yes
Special Issue No. 2: From a preponderance of the evidence, do you find that any of the following defendants used the trade secrets belonging to Reo Industries, Inc., for their own benefit?
A. Pangaea Resource Corporation? Yes

B. Pangaea Petroleum, Inc.? Yes
C. Pangaea Petroleum, Ltd.? Yes
Special Issue No. 3: Was the defendants' use of the trade secret a breach of confidence imposed on them by Reo?
Answer "yes" or "no."
Answer: Yes
Special Issue No. 4: Do you find from a preponderance of the evidence that Reo was damaged by defendants' use of the trade secret to their own advantage?
Answer "yes" or "no."
Answer: No
Special Issue No. 5: From a preponderance of the evidence, do you find that there is a reasonable probability that Reo would have entered into a contractual relationship with the Bivins family?
Answer "yes" or "no."
Answer: No

4. Rule 49(a) provides a procedure for special verdicts:
The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the

which the court submits only a list of factual issues to the jury and requests it to make special written findings. The judge then applies the law to these findings to enter the appropriate judgment. A party waives its right to jury trial of an omitted issue unless it demands its submission before the jury retires. The judge may make a finding on such an omitted issue, but if the judge does not do so it will be deemed that the judge made a finding in accord with the judgment on the special verdict. *See Taherzadeh v. Clements,* 781 F.2d 1093, 1100 (5th Cir.1986) ("the failure to object would normally constitute a waiver of his right to a jury finding .on the conversion issue"); *Park v. El Paso Bd. of Realtors,* 764 F.2d 1053, 1069 (5th Cir.1985) (pursuant to Rule 49(a), "district court implicitly made a finding that the price-fixing conspiracy did not injure the plaintiff"); *Molex, Inc. v. Nolen,* 759 F.2d 474, 478 (5th Cir.1985) (Rule 49(a) bars assignment of error where counsel did not object to the absence of the issue in the special interrogatories). Trial courts employ the Rule 49(a) special verdict in order to avoid confusion in the appellate stages of litigation and to avoid additional proceedings by identifying precisely the bases on which the jury rendered its verdict. *Stewart & Stevenson Serv., Inc. v. Pickard,* 749 F.2d 635, 644 (11th Cir.1984).

▪ The trial court in the instant appeal utilized a special verdict as provided in Rule 49(a). The jury answered five special issues regarding the trade secret question and Reo's counsel did not object to the special issues as presented. The jury clearly responded that although the plaintiff established the existence of a legal wrong by Pangaea, a monetary remedy did not exist for that wrong. Further, the fact

issue of the extent to which Pangaea benefitted from its use of the trade secret was not submitted to the jury nor was such an issue requested by Reo's counsel to be submitted to the jury. In light of the jury's finding that Reo suffered no damage, it is clear that no substantial benefit can be assumed. Consequently, based on the trial court's judgment and under self-executing Rule 49(a), it is implied that the judge made the necessary fact-finding regarding the equitable remedy of a constructive trust. For instance, in *Molex, Inc. v. Nolen,* 759 F.2d at 475, a former employer brought an action against a salesman seeking damages and injunctive relief based on allegations that the salesman had misappropriated and used the employer's trade secrets in taking a former customer. We held that the salesman waived his right to a jury trial on the issue of whether irreparable harm was shown so as to warrant the granting of permanent injunctive relief. The rationale of this holding was based on the fact that the salesman never requested submission of the issue to the jury nor did he object to the absence of the issue in the special interrogatories given to the jury. *Id.* at 478.

▪ The injury Reo suffered was not the loss of the lease because, as the jury found, Reo would not have acquired the Bivins Ranch lease anyway. The jury's finding of no damages, coupled with Reo's failure to object to the special issues submitted to the jury, brings Rule 49(a) into play. Therefore, Reo waived its right to a jury trial on the issue of the extent of the benefit running to Pangaea and, in the absence of the trial court making such a finding, the court is deemed to have made a finding that Pangaea received no substantial benefit in accordance with the judgment rendered on the special verdict.

several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. *If in so doing the court omits any issue of fact*

*raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.*
Fed.R.Civ.P. 49(a) (emphasis supplied).

Accordingly, for the reasons stated above, we find that the trial court did not err in denying Reo's Motion for Judgment seeking the imposition of a constructive trust.

**AFFIRMED.**