United States Court of Appeals,

Fifth Circuit.

No. 94-30258.

MINERAIS U.S. INC., EXALMET DIVISION, Plaintiff-Appellant,

v.

M/V MOSLAVINA, her engines, boilers, etc., et al., Defendants,

Turner Marine Bulk, Inc., Defendant-Appellee.

March 6, 1995.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY, DUHÉ and PARKER, Circuit Judges.

DUHÉ, Circuit Judge:

Defendant Turner Marine Bulk, a New Orleans stevedore, negligently commingled two lots of ferrochrome that Plaintiff Minerais U.S. Inc. was importing for resale in the United States. Minerais had purchased 700 metric tons (MT) high grade ferrochrome and 1000 MT low grade ferrochrome; 250 MT high grade ferrochrome escaped damage, and the remaining 450 MT high grade and the 1000 MT low grade ferrochrome were commingled. None of the combined material fell within the higher grade, and Plaintiff was forced to downgrade 450 MT high grade material to low grade for purposes of resale. This appeal concerns only the issue of damages.

The district court awarded damages based on wholesale values of the material (i.e., wholesale value of 450 MT high grade ferrochrome minus wholesale value of 450 MT low grade ferrochrome), finding that Plaintiff failed to establish the fair market value as the appropriate measure of damages. Holding that Plaintiff

1

adequately established fair market values, we reverse and remand for application of the market-value rule using retail values as specified herein.

## I. The Market-Value Rule.

The market-value rule requires that damages be calculated using market values *at the time the cargo is discharged.* Such a damage award places the injured cargo owner in the same position it was in before the damage. The market-value rule makes the cargo claimant whole by awarding him the difference between the fair market value of the undamaged cargo and the fair market value of the cargo as damaged on the date of discharge at the port of destination. *Cook Indus., Inc. v. Barge UM-308,* 622 F.2d 851, 854 (5th Cir.1980).

Nothing in *Illinois Central Railroad v. Crail* compels use of the wholesale price rather than retail. *See Illinois Cent. R.R. v. Crail,* 281 U.S. 57, 64-65, 50 S.Ct. 180, 181, 74 L.Ed. 699 (1930) ("[The market-value rule] may be discarded and other more accurate means [to measure the loss] resorted to, if, for special reasons, it is not exact or otherwise not applicable.") (awarding wholesale value of lost shipment). *Illinois Central* was a shortage-in-delivery case, not a damaged-goods case; where cargo is downgraded but not completely destroyed, this Court has held the market-value rule to be both a convenient and accurate means of measuring damages. *Cook Indus.,* 622 F.2d at 855-56. We hold the rule provides an accurate measure of damages in this case as well.

A. Fair Market Value of Undamaged Cargo.

2

In June 1990, when the shipment was discharged in New Orleans, the average market price of high grade ferrochrome was $1.15 per pound of contained chromium, according to *Metals Week* (a weekly publication), which was found by the district court to be the most reliable evidence of the market price. Published market quotations of bulk commodities provide simple proof of market value and damages so as to support application of the market-value rule. *See* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 10-36 (2d ed. 1994); *see also Amstar Corp. v. M/V ALEXANDROS T.,* 472 F.Supp. 1289, 1294 (D.Md.1979), *aff'd,* 664 F.2d 904 (4th Cir.1981). Further, Minerais' retail sales price in August 1990 corroborated *Metals Week* by establishing $1.15 per pound of chromium as the retail price. The market value of high grade ferrochrome at the time of the arrival of the shipment was thus adequately established at $1.15 per pound of chromium.

B. Fair Market Value of Cargo as Damaged.

The 450 MT damaged cargo after commingling was indistinguishable from the 1000 MT low grade ferrochrome with which it was mixed. *Metals Week* did not list a price for low grade ferrochrome at the time of discharge of the shipment, because there was no established market for it at the time. Minerais ordered the low grade to test the market for it. Minerais sold the 1450 MT low grade product in varying quantities over several months and the price varied over those few months. The district court declined to rely on a retail price in part because of the declining market and in part because it was unclear which resale accounted for the 450

3

MT downgraded material.

We hold that the sales price close in time to the discharge date is nevertheless sufficient to establish the market value of the downgraded product at the time of discharge. Some of the low grade material sold at $.99 per pound chromium in June and July 1990 as shown by two invoices (for sales of 160 MT and 400 MT). These contemporaneous sales provide sufficient evidence from which to apply the market-value rule. *See Standard Oil Co. v. Southern Pac. Co.,* 268 U.S. 146, 155, 45 S.Ct. 465, 466-67, 69 L.Ed. 890 (1925) (recognizing "contemporaneous sales of like property in the way of ordinary business" as one manner of establishing market value); *cf. Holden v. S.S. Kendall Fish,* 395 F.2d 910, 913 (5th Cir.1968) (requiring that damages be calculated at the time of delivery, because the carrier "is not and should not be the guarantor of the ups and downs of commodity prices").

We have no reason to factor in the varying prices of low grade ferrochrome over the ensuing months. Regardless of the fact that Plaintiff intended to introduce only a limited quantity of low grade ferrochrome into the United States market, the sale of 560 MT low grade product for $.99 per pound chromium near the time of delivery provides adequate proof of the fair market value of all of the downgraded product (only 450 MT) at the time of discharge.

## II. Conclusion.

Applying the general measure of the shipper's recovery, *i.e.,* the difference in market values before and after damage to the damaged cargo, will accurately compensate Plaintiff. Plaintiff

4

having provided sufficient evidence of fair market values of both high and low grade ferrochrome at the time of delivery, we remand for calculation of damages under the market-value rule using the June 1990 retail values.

REVERSED and REMANDED.