**FIRST COMMONWEALTH CORP.**

v.

**HIBERNIA NATIONAL BANK OF NEW ORLEANS.**

Civ. A. No. 91–2743.

United States District Court, E.D. Louisiana.

June 19, 1995.

---

John C. Combe, Jr., Warren M. Schultz, Jr., M. Richard Schroeder, T. Michael Twomey, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for First Com. Corp., plaintiff.

Robert Stephen Rooth, Corinne Ann Morrison, James Calvin Young, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, John F. Weeks, II, Usry & Weeks, Metairie, LA, for Hibernia Nat. Bank New Orleans.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court are First Commonwealth Corporation's "Renewed Motion for New Trial and Amended Judgment" and "Hibernia's Third Renewed Motion for Judgment as a Matter of Law."[1] Having reviewed the memoranda of the parties, the record and the applicable law, the Court GRANTS First Commonwealth Corporation's Motion in part and DENIES it in part. Further, the Court DENIES the motion of Hibernia National Bank.

741.39, reducing that award to $392,300.66 and the overall award to $525,559.58.

1. Both parties filed these "renewed" motions following the entry of Judgment in this matter on April 7, 1995. The Court understands that these motions supersede any similarly styled motions that were previously filed by the parties. *See* R.Docs. 247, 248, 253, 261. Hibernia National Bank's motion specifically incorporates its prior motions, while First Commonwealth Corporation's motion is entitled "renewed."

## Background

The parties tried this matter before a jury from January 23, 1995, through January 31, 1995. Plaintiff First Commonwealth Corporation (hereinafter "First Commonwealth") contended that Hibernia National Bank ("Hibernia") breached a "Custodian Agreement" entered into between the parties through its gross negligence.[2] First Commonwealth further alleged that as a result Hibernia's gross negligence, it had sustained damages. One of the crucial issues in the case was whether the damages allegedly sustained were foreseeable under Louisiana law.[3]

It is necessary to paint the backdrop of this matter in order to set the stage for the instant motions. First Commonwealth had entered into a financial arrangement with an entity named Public Investors, Inc. (PII) whereby First Commonwealth agreed to purchase from PII all of the issued and outstanding stock of Universal Guaranty Life Insurance Co. (Universal) and Alliance Life Insurance Company (Alliance) for $36.25 million. First Commonwealth paid $26.25 in cash and issued a promissory note to PII for the remaining $10 million. Pursuant to the same agreement, First Commonwealth loaned $8.25 million to Insurance Premium Assistance Company (IPAC), an affiliate of PII.

At the time that First Commonwealth and PII entered this agreement, Universal had an outstanding loan of $3.3 million to Fidelity Fire and Casualty Insurance Company (Fidelity Fire), another affiliate of PII, and Alliance had an outstanding unsecured loan of $750,000 to PII.

According to the terms of the agreement between First Commonwealth and PII, First Commonwealth had a right of setoff against indebtedness owing on its note for any amounts not paid when due on loans from First Commonwealth or its affiliates to IPAC, PII or Fidelity Fire.

The terms of the agreement provided that IPAC pledge and maintain as collateral a pool of approximately $9.2 million worth of "premium finance notes," which represented loans made to consumers by IPAC to finance automobile insurance premiums on policies issued by Fidelity Fire. The insureds in turn made monthly payments to IPAC. Because the notes decreased in value monthly, IPAC was required to periodically replenish the collateral.

In regard to this maintenance of collateral, First Commonwealth, IPAC and Hibernia entered into a written "Custodian Agreement" with Hibernia, in which Hibernia agreed to receive, catalog and store premium finance notes and to account for all notes delivered into and withdrawn from its custody. Hibernia was further obligated to forward to First Commonwealth certain documents furnished by IPAC which essentially indicated that old notes had been withdrawn and new notes deposited.

In March 1990 IPAC stopped delivering premium finance notes to Hibernia and defaulted on its payment obligations to First Commonwealth in July 1990. By the time First Commonwealth seized premium finance notes in September 1990, their value had decreased to approximately $1.171 million.

In February 1991 First Commonwealth entered into a settlement agreement with PII and its affiliates in which First Commonwealth applied the approximate $1.171 million recovered to satisfy a portion of the IPAC note and then used its right of setoff to satisfy the remainder of the IPAC note and other claims. Even with this compromise, $3.3 million on the Fidelity Fire note and $970,000 of breach of warranty claims against PII and its affiliates remained. (First Commonwealth held $1.2 million in collateral on the Fidelity Fire note.)

First Commonwealth sued Hibernia claiming a breach of the Custodian Agreement, which, in turn, caused a collateral deficiency for First Commonwealth. It sought damages on the outstanding indebtedness on the Fidelity Fire loan and the warranty claims less the value of the remaining collateral. First Commonwealth also sought to recover legal expenses incurred during the 1991 litigation against PII and its affiliates as well as the fees incurred while attempting to replace an alleged cash shortfall it suffered because

2. The Custodian Agreement was entered into evidence as Plaintiff's Exh. No. 1.

3. The Custodian Agreement provided that Louisiana law controlled.

of the defaults. First Commonwealth additionally sought the return of $64,400 in custodial fees paid to Hibernia and the interest that had subsequently accrued on the Fidelity Fire loan.

Hibernia answered, raising various defenses, including but not limited to fault of a third party (IPAC), setoff already received by First Commonwealth, and lack of causation. Hibernia also counterclaimed for custodial fees it did not receive since June 1990 and for indemnity from First Commonwealth pursuant to the terms of the Custodian Agreement. Hibernia dismissed the first part of its counterclaim at the start of trial. (R.Doc. 239.)

After hearing all of the evidence and being instructed on the applicable law, the jury answered the first three special interrogatories on the Verdict Form.[4] The jury answered "Yes" to the initial question: "Do you find from a preponderance of the evidence that Hibernia National Bank breached the Custodian Agreement entered into with First Commonwealth Corporation through its gross negligence?" In its answer to the second interrogatory, the jury found that "Hibernia's breach of the Custodian Agreement caused First Commonwealth damages." However, the jury answered "No" to the third question: "Do you find that any damages caused by Hibernia's breach of the Custodian Agreement with First Commonwealth were foreseeable?"

Because foreseeability was an element that First Commonwealth had to prove in order to succeed, the Court entered judgment in favor of Hibernia on First Commonwealth's claim, dismissing its claim with prejudice and taxing costs against First Commonwealth.[5]

Hibernia also had filed a counterclaim against First Commonwealth, which the parties agreed to submit to the Court instead of to the jury for resolution. In an "Order and Reasons" dated February 17, 1995,[6] the Court granted First Commonwealth's motion for judgment as a matter of law on the counterclaim. Hibernia had alleged that it was entitled to attorneys' fees and expenses as a result of the litigation pursuant to Sec-

tion E.(b) of the Custodian Agreement. This section provided that First Commonwealth agreed to indemnify and hold harmless Hibernia for certain matters "including reasonable counsel fees and expenses suffered or incurred by Hibernia ... provided Hibernia has fulfilled its obligations hereunder...." One of those obligations provided that Hibernia would not be liable for any acts or omissions unless committed by willful misconduct or gross negligence.[7]

In ruling on the issue of whether Hibernia was entitled to attorneys' fees, the Court adopted the jury's finding that Hibernia was grossly negligent. Therefore, the indemnity relied on by Hibernia had no effect, and the Court ordered that the counterclaim of Hibernia be dismissed with prejudice. (R.Doc. 249.)

First Commonwealth brings the instant motion seeking a new trial on the issues of foreseeability and damages on the grounds that the jury's verdict was contrary to the weight of the evidence, that the jury's verdict resulted from an error in the verdict form on the issue of foreseeability, that the jury's verdict was inconsistent, and that the jury's verdict resulted in a miscarriage of justice.

First Commonwealth also seeks a new trial or, alternatively, an amended judgment on the issue of whether it is entitled to reimbursement of fees paid to Hibernia under the Custodian Agreement. Finally, First Commonwealth seeks amendment of the judgment such that Hibernia is taxed for costs due to the jury's finding of gross negligence by Hibernia.

Hibernia's motion is also related to the jury's finding of gross negligence on Hibernia's part. Specifically, Hibernia argues that the findings of gross negligence and causation are not supported by substantial evidence. Additionally, Hibernia contends that the judgment dismissing Hibernia's counterclaim is not supported by substantial evidence and contrary to the law.

---

**4.** The original Verdict Form is attached to R.Doc. 245.

**5.** Judgment is in the record as Doc. 260.

**6.** R.Doc. 249.

**7.** Willful misconduct was not an issue at trial.

Because Hibernia's motion addresses the first two issues answered by the jury, the Court will analyze Hibernia's motion first, followed by a review and analysis of First Commonwealth's motion, which deals with the jury's answer to the third interrogatory finding that First Commonwealth's damages were not foreseeable by Hibernia.

## Law and Application

I. Hibernia's Motion for Judgment as Matter of Law

"A motion for judgment as a matter of law (previously motion for directed verdict or J.N.O.V.) in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Hiltgen v. Sumrall,* 47 F.3d 695, 699 (5th Cir. 1995). "A jury verdict must be upheld unless 'there is no legally sufficient evidentiary basis for a reasonable jury to find' as the jury did." *Id.* at 700, *quoting* Fed.R.Civ.P. 50(a). The Fifth Circuit has explained this standard and its application as follows:

> A jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict. On appeal we are bound to view the evidence and all reasonable inferences in the light most favorable to the jury's determination. Even though we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to re-evaluate the credibility of witnesses. We must not substitute for the jury's reasonable factual inferences other inferences we may regard as reasonable.

*Id., quoting Rideau v. Parkem Indus. Services, Inc.,* 917 F.2d 892, 897 (5th Cir.1990). This standard is applicable not only to the appellate court but also to the trial court. *Hiltgen,* 47 F.3d at 699–70.

With this principle in mind, the Court turns to Hibernia's motion. As noted, Hibernia contends that the jury's findings of gross negligence and causation are not supported by substantial evidence. Further, the

Court's dismissal of its counterclaim for attorneys' fees, in accord with the jury's verdict, is also unsupported by substantial evidence.

A. Gross Negligence

■ Under Louisiana law, on which the jury was instructed, gross negligence has been described as the "want of even slight care" or "the want of that diligence which even careless men are accustomed to exercise." *Ambrose v. New Orleans Police Department Ambulance Service,* 639 So.2d 216, 219 (La.1994), *quoting State v. Vinzant,* 200 La. 301, 7 So.2d 917 (1942). As *Ambrose* recognized, gross negligence has also been described as the "entire absence of care" and the "utter disregard of the dictates of prudence amounting to complete neglect of the rights of others." *Ambrose,* 639 So.2d at 220, *quoting Hendry Corp. v. Aircraft Rescue Vessels,* 113 F.Supp. 198 (E.D.La.1953). Additionally, gross negligence can be in the form of "extreme departure from ordinary care of the want of even scant care." *Ambrose,* 639 So.2d at 220, *quoting* W. Page Keeton *et al, Prosser and Keeton on the Law of Torts,* § 34, at 211 (5th Ed.1984).

■ Reviewing the jury's verdict in light of the evidence adduced at trial and against this legal background of gross negligence, the Court finds that, weighing all inferences in favor of the jury's determination, there is a legally sufficient basis for the jury's finding on gross negligence. First, it was uncontested, as set forth in the pretrial order, that Hibernia never provided First Commonwealth with certain of the documents called "contract journals" as required under the Custodian Agreement and never sent First Commonwealth certain other documents called "refund reports" until early July 1990. (R.Doc. 206, p. 32, Nos. 17 and 19.)[8]

Second, as First Commonwealth points out in its memorandum in opposition, the record is replete with evidence from which the jury could conclude that Hibernia was grossly negligent.[9] By way of example and not for

8. Specifically, these were refund reports relative to notes for which a refund report had been submitted after execution of the Custodian Agreement.

9. First Commonwealth's "Memorandum in Opposition to Hibernia National Bank of New Orleans' Third Renewed Motion for Judgment as a Matter of Law," R.Doc. 264, details this evidence

purposes of exclusivity, the evidence established that Hibernia never established written procedures in regard to its obligations to First Commonwealth under the Custodian Agreement, did not communicate between its departments so that someone at Hibernia knew they were responsible for Hibernia's obligations under the agreement, never sent any refund report in a timely manner, and failed to notify First Commonwealth when new contract journals ceased arriving from IPAC. Further, after First Commonwealth inquired in June 1990 about reports due under the Custodian Agreement, Hibernia's personnel did not respond and apparently did not even realize that certain collateral of its own was intermingled with collateral belonging to First Commonwealth. Finally, and perhaps most importantly, there seemed to be a breakdown in responsibility at the bank for Hibernia's obligations under the Custodian Agreement.

Additionally, the expert testimony in the case supports the jury's verdict. First Commonwealth's expert testified that Hibernia's actions, including the foregoing, amounted to "major deviations" and "gross deviations" from banking practices.[10] Hibernia's own expert also testified that the written procedures on which Hibernia relied were not written for the Custodian Agreement but for another set of circumstances and were not appropriate for the Custodian Agreement in terms of addressing the issue of sending contract journals or refund reports to First Commonwealth.[11] Additionally, any inability of a bank to distinguish its own collateral from that it is holding for others is inconsistent with customary banking practices.[12] Similarly, Hibernia's failure to send contract journals and refund reports to First Commonwealth in accord with the Custodian Agreement was inconsistent with banking practices.[13]

This expert testimony coupled with the other evidence establishes a sufficient evidentiary basis for a reasonable jury to find gross negligence on the part of Hibernia.

### B. Causation

In accord with Louisiana law, the jury was instructed that Hibernia's gross negligence must have caused First Commonwealth's damages in order for First Commonwealth to prevail, *i.e.*, that Hibernia's gross negligence was a substantial factor contributing to or bringing about or actually causing First Commonwealth's damages. *See Roberts v. Benoit*, 605 So.2d 1032, 1042 (La.1991) *rehearing granted on other grounds*, 605 So.2d 1032, 1050 (La.1992).

In order to decide whether the jury's finding of causation had a legally sufficient basis, it is important to clarify exactly what damages First Commonwealth was seeking. Testimony at the trial showed that the $8.25 million for which Hibernia was holding the collateral was paid in full to First Commonwealth through a setoff between First Commonwealth and its debtor. In effect, First Commonwealth was seeking damages for other alleged wrongs for which it was not able to use the setoff procedure once it was used for the losses related to the Custodian Agreement. These damages included legal fees and out-of-pocket costs, breach of warranties and loss of value of a mortgage loan.[14]

■ The issue, then, is whether there is a "legally sufficient evidentiary basis" for the jury in this case to find that Hibernia was a "substantial factor" in causing these damages to First Commonwealth. Although the Court finds this issue to be a closer one than that of gross negligence, the Court finds that the evidence presented a legally sufficient basis for the jury to find that Hibernia's gross negligence was a substantial factor in

---

at pp. 2–7, complete with reference to testimony attached as exhibits, and summarizes this evidence at pp. 8–11. The Court finds it unnecessary to similarly detail this evidence.

**10.** Testimony of Benton Wakefield, attached as Exh. B to memorandum in opposition of First Commonwealth, R.Doc. 264.

**11.** Testimony of William Staats, pp. 84–95, attached as Exh. A to First Commonwealth's memorandum in opposition, R.Doc. 264.

**12.** *Id.,* p. 102.

**13.** *Id.,* pp. 103–05.

**14.** *See* Verdict Form, Special Interrogatory No. 4.

causing the damages First Commonwealth complained of. The evidence was clear that had First Commonwealth not used the setoff as a result of IPAC's default and Hibernia's gross negligence, First Commonwealth would have had the setoff available for use in regard to the damages complained of.

Hibernia argues that, in light of the jury's finding on foreseeability, the jury could only have meant that Hibernia caused damages on the $8.25 million in losses that was later reduced in the setoff, *not* any other losses. While this construction may be plausible, the inferences in the evidence viewed in favor of First Commonwealth support the jury's verdict as legally sufficient. Again, the Court "must not substitute for the jury's reasonable factual inferences other inferences that [Hibernia] may regard as more reasonable." *Rideau*, 917 F.2d at 897.

Finally, the Court finds that Hibernia's discussion of the law of pledge under Louisiana law and First Commonwealth's "cross-collateralization theory" are inapplicable to the issue of causation in view of First Commonwealth's theory of the case. First Commonwealth does not contend that IPAC pledged its premium finance notes for the indebtedness of third parties such that First Commonwealth would have been able to foreclose on the premium finance notes for those other debts. Instead, First Commonwealth contends now and contended before the jury that Hibernia's gross negligence in the performance of the Custodian Agreement caused, or forced, First Commonwealth to use the setoff to reduce the debt owed by IPAC's default as opposed to using the setoff to reduce other debts.

### C. Dismissal of Counterclaim

Hibernia also asks this Court to grant judgment as a matter of law on its previous decision to dismiss Hibernia's counterclaim for attorneys' fees. The Court will not belabor this point, for it already has addressed the issue in an "Order and Reasons" issued shortly after trial. (R.Doc. 249). Suffice it to say that the Court agrees with the jury's

finding of gross negligence, which finding prevents Hibernia from recovering on its counterclaim for attorneys' fees under the plain language of the Custodian Agreement. Section E.(b) of the Custodian Agreement itself, which provides that Hibernia is entitled to indemnity and hold harmless "provided Hibernia has fulfilled its obligation hereunder in accordance with the standards set forth in paragraph A.(3)." Custodian Agreement, Exh. 1. One of those standards in A.(3) was that Hibernia's performance not be not grossly negligent. *Id.*[15] Because Hibernia was grossly negligent, it cannot recover on its counterclaim.

The case upon which Hibernia relies, *Commercial Bank & Trust Co. v. Bank of Louisiana*, 487 So.2d 655 (La.App. 5th Cir.1986) is inapplicable because the Court agrees with the jury's finding of gross negligence.

## II. First Commonwealth's Motion for New Trial and Amended Judgment

Rule 59(a) of the Federal Rules of Civil Procedure does not specifically delineate the appropriate grounds for granting a new trial, stating only that a motion for new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

> It has been said that the general grounds for a new trial are that the verdict is against the weight of the evidence, that the damages are excessive, or that for other reasons the trial was not fair, and that the motion may also raise questions of law arising out of substantial errors in the admission or rejection of evidence or the giving or refusal of instructions.
>
> \* \* \* \* \* \*
>
> Any error of law, if prejudicial, is a good ground for a new trial.

Wright & Miller, *Federal Practice & Procedure*: Civil § 2805 at 37–38. The burden rests on the party seeking a new trial to show harmful error. *Id.*, § 2803 at 32.

The decision on whether to grant a new trial rests in the sound discretion of the

---

**15.** The other standard was that Hibernia's misconduct not be willful. As noted, this was not an issue.

trial court. *United States v. Bucon Construction Company, Inc.,* 430 F.2d 420, 423 (5th Cir.1970). Unlike the limited authority of the trial court in determining a motion for judgment as a matter of law, the court has wider authority in deciding whether to grant a motion for new trial.

> There is an important distinction between a motion for a directed verdict or a motion for judgment n.o.v. [now motion for judgment as a matter of law] on the one hand and a motion for new trial on the other. In passing on a motion for directed verdict, or a judgment n.o.v., the court does not exercise discretion but decides a pure question of law, that is, whether the evidence, considered in the light most favorable to the party against whom the motion is directed, affords substantial support for a verdict in his favor.
>
> \*      \*      \*      \*      \*      \*
>
> In passing on a motion for new trial, the court may and should exercise a sound discretion. . . .
>
> A trial judge, on a motion for new trial, may set aside a verdict and grant a new trial, if in his opinion, "the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."

*Bucon,* 430 F.2d at 423 (citation omitted). *See also National Car Rental System, Inc. v. Better Monkey Grip Company,* 511 F.2d 724, 730 (5th Cir.1975) (determination that jury's answers to special interrogatories were against the weight and preponderance of evidence proper ground for granting new trial); *Spurlin v. General Motors Corporation,* 528 F.2d 612, 620 (5th Cir.1976) (motion for new trial should not be granted unless jury verdict is against the great weight of evidence).

A. New Trial on Issues of Foreseeability and Damages

1. "Jury's Verdict is Contrary to Weight of the Evidence"

First Commonwealth's argument on this issue boils down to the following. Hibernia knew that the Custodian Agreement obligated it to hold collateral "to secure indebtedness of [Insurance Premium Assistance Corporation] to" First Commonwealth, "in which [First Commonwealth] has a security interest." [16] First Commonwealth concedes that this is the only mention of "indebtedness" in the Custodian Agreement.[17] However, because Hibernia knew that it was holding more than $9.2 million in collateral, its damages—although not directly related to the collateral—flow directly from the loss of the collateral.

■ Under the Louisiana Civil Code, an obligor in good faith is liable only for damages "that were foreseeable at the time the contract was made." LSA–C.C. Art. 1996. The Court instructed the jury as to this law and in accord with the following.

> Foreseeable damages are such damages as may fall within the foresight of a reasonable man. In distinguishing foreseeable from unforeseeable damages, the court should consider the nature of the contract, the nature of the parties' business, their prior dealings, and all other circumstances related to the contract and known to the obligor. Any special circumstances made known to the obligor by the obligee should also be taken into account.

Comment (b), LSA–C.C. Art. 1996.

■ Considering "foreseeability" under Louisiana law, the Court declines to exercise its discretion to grant a new trial in this matter. The jury's finding that First Commonwealth's damages as to any losses it sustained when it could not use its setoff against these other losses as opposed to the loss of collateral is supported by the evidence and not against the "weight and preponderance of the evidence." *National Car Rental, supra.* Indeed, the "weight and preponderance of the evidence" clearly supports the inference that Hibernia did not know about the other obligations. An uncontested fact in this case was that First Commonwealth nev-

---

**16.** Custodian Agreement, Plaintiff's Exh. 1, p. 1.

**17.** Memorandum in support of motion, R.Doc. 262, p. 7.

er provided Hibernia a copy of either the Stock Purchase Agreement or the IPAC Financing Agreement. (Pretrial Order, R.Doc. 206, p. 29, No. 4.) Further, the Custodian Agreement does not detail the indebtedness of IPAC to First Commonwealth much less indicate that if the collateral for this indebtedness was somehow lost or diminished, then First Commonwealth would have to use a setoff to recoup its indebtedness from IPAC and would not be able to use the setoff in regard to other obligations by third parties or other expenses. In view of this evidence, the jury's decision on foreseeability is not against the clear, or great, weight of the evidence. The Court refuses to "intrud[e] upon the jury's function" and decision after it carefully listened to all of the testimony and reviewed all the evidence in this matter for seven days. *See Spurlin*, 528 F.2d at 620.

First Commonwealth argues, without citation, that "foreseeability begins and ends with the concept that a diminished collateral position can cause a creditor a loss at least equal to the amount of the lost collateral." First Commonwealth memorandum in support, R.Doc. 262, p. 17. In addition to the fact that this statement is not necessarily in accord with Louisiana law on foreseeability as set forth above, First Commonwealth's contention fails because, as the evidence plainly showed, First Commonwealth was seeking damages for other losses not related to the "indebtedness" under the Custodian Agreement. Thus, as explained above, the jury's decision as to the lack of foreseeability was amply supported by the evidence.

First Commonwealth correctly argues that foreseeability is a concept that should be applied as of the time the Custodian Agreement was entered into. *Id.*, p. 19. The jury's finding that First Commonwealth's damages were not foreseeable is in line with this contention, especially considering that the only description in the Custodian Agreement was "indebtedness of IPAC," not indebtedness of any other entity to First Commonwealth.

2. Misleading Nature of Verdict Form

■ First Commonwealth next argues that the Verdict Form was misleading because Question 4, asking the jury to delineate damages, repeated the word "foreseeable," although Question 3 had already asked the jurors to determine whether the damages were foreseeable.[18] First Commonwealth claims that because Questions 3 and 4 of the jury interrogatories imply that the actual damages that must be foreseeable are those listed in paragraph 4, these paragraphs also imply that Hibernia had to have specific knowledge of the specific transactions listed in paragraph 4. Thus, First Commonwealth contends, the law on foreseeability is misstated.

This argument fails for several reasons. Initially, the Court notes that the jury did not even reach Question 4. The jury found that First Commonwealth's damages were not foreseeable and returned to the courtroom in accord with the Verdict Form. Second, the use of the word "foreseeable" in Question No. 4 could not have confused the jurors or led them to believe that specific knowledge was needed by Hibernia for First Commonwealth to recover the damages claimed any more than the use of the term "gross negligence" again in Question No. 4 could have confused the jury. Use of these terms was not redundant; the purpose was to reinforce to the jury that any damages had to result from Hibernia's gross negligence and from foreseeability, as set forth in Questions 1 and 3. First Commonwealth's argument to the contrary is pure speculation and is based on an illogical leap of thought. Finally, although First Commonwealth objected to the inclusion of "foreseeable" in Special Interrogatory No. 4, the Court notes that First Commonwealth made no objection to

---

18. Special Interrogatory No. 4 stated:

4. Indicate in dollars the amount of damages, if any, for the following items that you find from a preponderance of the evidence that First Commonwealth suffered as a foreseeable result of Hibernia's gross negligence:

a) Legal fees and out-of-pocket costs: $_____
b) Breach of warranties: $_____
c) Loss of value of mortgage loan, minus the value of the property: $_____ .

Attachment to R.Doc. 245.

Special Interrogatory No. 3 or the instruction on which it was based.[19]

First Commonwealth also argues, though obliquely, that the jury's negative answer to Question No. 3 is inconsistent with its answers to the first two Special Interrogatories. "When a litigant claims that the jury's answers to interrogatories are inconsistent, the seventh amendment compels the district court to seek a 'view of the case which makes the jury's answers consistent.'" *Munn v. Algee,* 924 F.2d 568, 576 (5th Cir.1991), *quoting Griffin v. Matherne,* 471 F.2d 911, 915 (5th Cir.1973). Special interrogatory "[a]nswers should be considered inconsistent only if there is no way to reconcile them." *Willard v. The John Hayward,* 577 F.2d 1009, 1011 (5th Cir.1978), *citing Griffin.* "The test is whether the jury's answers can 'be said to represent a logical and probable decision on the relevant issues as submitted.'" *Id., quoting Griffin.*

For the reasons explained above, the jury's answers to interrogatories one through three represent a careful, considered, rational decision in light of the evidence presented and are not inconsistent. Indeed, the Court does not have to travel far to reconcile the answers.

**B. New Trial on Demand for Reimbursement of Fees**

■ First Commonwealth also seeks a new trial or, alternatively, an amended judgment on the issue of its reimbursement of fees paid to Hibernia pursuant to the Custodian Agreement. First Commonwealth sought to recover these fees as well as the damages.

The Court instructed the jury, in accord with Louisiana law, that First Commonwealth was not entitled to recover both the fees *and* damages. *See Morris v. Homco International, Inc.,* 853 F.2d 337, 346 (5th Cir.1988).[20] The Verdict Form did not ask the jury to answer whether First Commonwealth was entitled to recover the fees paid to Hibernia if the jury found First Commonwealth was not entitled to damages. However, First Commonwealth did not object to this omission. As a result, it has waived its right to a trial by jury on this issue. Fed. R.Civ.P. 49(a).[21] *See J.C. Motor Lines, Inc. v. Trailways Bus System,* 689 F.2d 599, 601–03 (5th Cir.1982).

In *J.C. Motor Lines,* the Fifth Circuit recognized that, absent a demand by the parties that an issue be submitted to a jury, a court can make its own findings on the issue or, if the Court fails to make such a finding, "findings on that issue are deemed to have been made which are in accord with the judgment rendered." *Id.* at 602–03. One later Fifth Circuit opinion has described this latter method of curing the omission as "self-executing," *i.e.,* "based on the trial court's judgment and under self-executing Rule 49(a), it is implied that the judge made the necessary fact-finding...." *Reo Industries, Inc. v. Pangaea Resource Corp.,* 800 F.2d 498, 501 (5th Cir.1986).

---

**19.** *See* Transcript of Jury Charge Conference, attached to Hibernia's memorandum in opposition, R.Doc. 265, Exh. 3, p. 14.

**20.** The Court stated:

The primary aim of the law of damages for breach of contract is to place the plaintiff in the same position in which he would have been had the contract been fulfilled. For this reason, First Commonwealth is not entitled to recover both the damages it sustained as a result of Hibernia's breach of the contract through gross negligence, if any, *and* a refund of the amount it paid to Hibernia in exchange for its obligations under the contract. Such a recovery would place plaintiff in a better position than it would have been had Hibernia not committed gross negligence, assuming you find that Hibernia *did* commit gross negligence.

Accordingly, if First Commonwealth is entitled to recover damages from Hibernia based upon Hibernia's breach of the Custodian Agreement, you cannot award First Commonwealth damages for amounts it paid Hibernia pursuant to the Custodian Agreement.
Attachment to R.Doc. 245, p. 12.

**21.** This rule states, in pertinent part:

If ... the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to any issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

In the present case, neither the jury nor the Court made a finding on the factual issue of whether First Commonwealth was entitled to the return of the fees it paid to Hibernia under the Custodian Agreement. The judgment entered in this case (R.Doc. 260) was based on the jury's findings as set forth in the jury's answers to the special interrogatories. *See* Minutes of Trial, January 31, 1994 (jury verdict made the judgment of the court). (R.Doc. 245.) On that basis, judgment was entered in favor of Hibernia as to First Commonwealth's failure to recover its claimed damages. However, the judgment did not address the issue of the return of the fees paid to Hibernia.

Because the jury's verdict was made the judgment of the Court, because the jury found Hibernia to be grossly negligent in its performance under the Custodian Agreement, and because the jury instructed that First Commonwealth could not recover damages *and* the fees it paid to Hibernia, it is both logical and implied under the judgment that First Commonwealth is entitled to a return of its fees paid to Hibernia.

Hibernia opposes this issue on two grounds. First, Hibernia argues that First Commonwealth has waived this issue entirely, citing *Central Progressive Bank v. Fireman's Fund Ins. Co.*, 658 F.2d 377, 381 (5th Cir.1981) and *Latuso v. Uniroyal, Inc.*, 783 F.2d 1241, 1243 (5th Cir.1986). However, *Central Progressive Bank* does not quote the entire portion of Rule 49(a) referred to in note 21, *supra*, and does not discuss Rule 49(a) at length as in *J.C. Motor Lines*. Further, *Latuso* recognizes that if a court fails to make a finding, the Court is "deemed to have made a finding in accord with the judgment on the special verdict." Fed.R.Civ.P. 49(a).

Hibernia's second argument is that it substantially performed the contract under Louisiana law, so as to prevent First Commonwealth from recovering the fees paid to Hibernia. This contention fails in the face of the evidence of gross negligence in the rec-

ord. As a result, the case cited by Hibernia relative to "substantial performance" under the contract, *Williams Engineering, Inc. v. Goodyear*, 480 So.2d 772, 779 (La.App. 5th Cir.1985), *aff'd*, 496 So.2d 1012 (La.1986), is inapposite.

Moreover, Hibernia conceded during trial that First Commonwealth was entitled to have the question of return of fees answered *"if and only if:* (1) the jury concludes that Hibernia *did* breach the Custodian Agreement; *and* (2) the jury nevertheless fails to award [First Commonwealth] any damages." "Hibernia's Objections to First Commonwealth Corporation's Proposed Special Verdict Form," (R.Doc. 237, p. 6.) Hibernia cited *Homco, supra*, for this proposition, arguing that the primary aim of the law is to place the plaintiff in the same position had the contract which was breached been fulfilled. *Id.*, p. 5.

Thus, the judgment will be amended to reflect an award of $64,400 in favor of First Commonwealth and against Hibernia for fees paid to Hibernia under the Custodian Agreement. Such an amendment will place First Commonwealth, the aggrieved party, in the same position it would have been had there been no breach by Hibernia through its gross negligence.[22]

### C. Assessment of Costs

In the Judgment entered in this matter, the Court awarded costs in favor of Hibernia. First Commonwealth asks this Court to reconsider, contending that Hibernia was not a "prevailing party" within the meaning of that term under Fed.R.Civ.P. 54(d). First Commonwealth further seeks that costs be awarded in its favor or that each party be required to bear its own costs.

Rule 54(d) provides, in pertinent part, that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." In order to determine who is the prevailing party, "the case must be viewed as a whole."

---

22. Even had the Court addressed the omitted issue pursuant to the authority granted under Rule 49(a), the Court would have reached the same conclusion. The Court would have made this finding in view of its agreement with the jury that Hibernia was grossly negligent in its performance of the agreement and *Homco, supra*. The evidence to support such a finding is addressed earlier in this ruling.

*Studiengesellschaft Kohle v. Eastman Kodak,* 713 F.2d 128, 131 (5th Cir.1983). "A party need not prevail on all issues to justify an award of costs." *Id.* Stating this another way, the determination of "prevailing party" is a practical matter. *Minerais U.S. Inc. v. M/V Moslavina,* 849 F.Supp. 467, 479 (E.D.La.1994) (Sear, C.J.), *rev'd on other grounds,* 46 F.3d 501 (5th Cir.1995), *citing Schwarz v. Folloder,* 767 F.2d 125, 130 (5th Cir.1985). An award of costs is within the discretion of the trial court. *Kodak,* 713 F.2d at 131.

While Rules 54(d) does not prevent a court from requiring that each party, including the prevailing party, bear its own costs, "the language of the rule reasonably bears the intendment that the prevailing party is prima facie entitled to costs and it is incumbent on the losing party to overcome that presumption … [since] denial of costs … is in the nature of a penalty for some defection on his part in the course of the litigation." *Minerais,* 849 F.Supp. at 479, *quoting Walters v. Roadway Express, Inc.,* 557 F.2d 521, 526 (5th Cir.1977).

 Applying these principles to the instant motion, the Court finds that First Commonwealth is entitled to recover costs in this matter as the prevailing party because, under today's ruling, First Commonwealth is entitled to recover on its claim for fees paid to Hibernia under the Custodian Agreement. Although this recovery is much smaller than First Commonwealth sought for the other damages, First Commonwealth should not be penalized because it recovers less than that totally sought. *See Minerais,* 849 F.Supp. at 479.

Further, First Commonwealth prevailed on Hibernia's counterclaim for attorneys' fees and expenses.

Therefore, the Court will also amend the judgment to reflect an award of costs in favor of First Commonwealth and against Hibernia, not *vice versa.*

III. Conclusion

As noted above, this matter was tried for seven days before an attentive, patient jury that the Court believes performed substantial justice in this matter. With the ruling of the Court today, the Court also believes that substantial justice is done overall.

Accordingly,

IT IS ORDERED that First Commonwealth Corporation's "Renewed Motion for New Trial and Amended Judgment" is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that "Hibernia [National Bank's] Third Motion for Judgment as a Matter of Law" is DENIED.

IT IS FURTHER ORDERED that an Amended Judgment be filed in accord with these ORDERS.