**Robert L. NORTON, Appellant,**

v.

**INTEGRAL CORPORATION, Appellee.**

**No. 13069.**

Court of Civil Appeals of Texas, Austin.

July 18, 1979.

Rehearing Denied Aug. 22, 1979.

Morton A. Rudberg, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, for appellant.

Richard T. Halpain, La Grange, for appellee.

O'QUINN, Justice.

Integral corporation brought this lawsuit in April, 1979, seeking to enforce an agreement with Robert L. Norton, a former employee, not to compete, upon leaving such employment, with the corporation in the sale or manufacture of competitive electrical equipment to the center pivot sprinkler industry. From a temporary injunction enjoining Norton until trial of the cause on its merits, Norton appeals and brings six points of error. We will modify the judgment and will affirm the judgment as modified.

Resolution of the issues involved turns on analysis of the legal status of Integral Corporation after its business activities passed through a series of corporate rearrangements. We conclude, in brief, that Integral Corporation is not entitled to the broad protection accorded the company by the trial court's injunctive order.

The employment contract here involved was entered into in February of 1975 with The Eads Company of Dallas, a corporation, the corporate antecedent of Integral Corporation. The principal business activity of Eads Company at that time was acting as a manufacturer's representative for Tamaqua Cable Company in selling electrical cable which was used in the construction and operation of center pivot irrigation equipment. Eads owned a subsidiary, Integral Systems Incorporated, which manufactured electronic controls for center pivot irrigation equipment.

The restrictive portion of the employment contract between Eads and Norton provided in essential part that ". . . upon termination of his employment . . . [Norton] shall not directly or indirectly, within the existing marketing area of the Company in the State of Texas or any future marketing area of the Company begun during employment . . . enter into or engage generally in direct competition with The Eads Company of Dallas in the business of manufacturing or acting as a Sales Representative for *sales of competitive electrical equipment to the center pivot sprinkler industry* either as an individual . . . or as an employee or agent . . for a period of three (3) years after date of termination of his employment . . ." (Emphasis added).

Thereafter in 1975 Eads Company underwent structural changes in course of which the company's name was changed to Integral Corporation, the subsidiary Integral Systems Incorporated was eliminated, and a new manufacturing operation was commenced which produced "cable con," a product fabricated by passing wire, already made, through an extruder to encase the wire in a tube, or conduit, and winding the finished product onto a reel for convenient placement, in a single operation, of both wire and conduit in a channel to provide underground wiring. Subsequent to these changes, Integral Corporation engaged in three functions: (1) manufacturing representative selling electrical cable, (2) manufacturing and selling center pivot controls, and (3) manufacturing and selling "cable con," the underground cable.

In February of 1978 further changes were effected by creating a new corpora-

tion, designated The Eads Company, to which was transferred all that portion of Integral Corporation acting as a manufacturing representative selling electrical cable. In November of 1978 additional corporate changes were made, with the functions of manufacturing electrical controls for center pivot machines being merged with another manufacturer, a former competitor of Integral Corporation in that field, and all such functions were placed in a new corporation, Hydrus Corporation. Remaining with Integral Corporation thereafter were only the functions involved in the manufacture of "cable con."

Beginning with the employment contract with Norton in February of 1975, and subsequently through the corporate rearrangements already related, the control, through stock ownership, of the several corporations was, and remains, with James L. Gray, president of The Eads Company of Dallas in 1975 and president at the time of trial of Integral Corporation. At the hearing on temporary injunction, Gray testified that in the end the ". . . whole operation is a controlled group, controlled by me." Gray also testified that the separate functions of manufacturing and selling, performed by the several corporations, were "reinforcing to each other . . . particularly since I am the majority stockholder in all of them . . ."

Integral Corporation's position on appeal appears to be that, it is immaterial that the company no longer is ". . . in the business of manufacturing or acting as a Sales Representative for sales of competitive electrical equipment to the center pivot sprinkler industry," as described in the employment contract of 1975 with Norton, because Gray "owned the majority interest in and controlled each of the companies . . . more particularly was in charge of sales and marketing . . . and Appellant would have continued to report to and work under Jim Gray . . ." if Norton had remained with Integral.

Although Integral Corporation, the only corporation with which Norton contracted

in 1975, is engaged now only in manufacture of "cable con," appellee argues that "the management stayed essentially the same and that Jim Gray controlled all of the various companies mentioned by owning a majority of the outstanding stock," and that the trial court correctly enjoined Norton from competing with any of the several corporations controlled by Gray.

The record is clear in showing that each of the corporations has a separate charter, a separate set of by-laws, separate officers, and a separate board of directors, and thus each corporation is a separate legal entity. Integral Corporation by contract and for a fee performs accounting services for one or more of the other companies, and the principal connection among the corporations is through Gray as the majority stockholder of each entity.

Appellant Norton brings nine points of error, the force of the first six points being his claim that the trial court abused its discretion in enjoining him from competing with Integral Corporation in aspects of business in which the company is no longer engaged.

Norton resigned his position with Integral Corporation as vice president of sales early in December of 1978. The Hydrus Corporation had been chartered in November, at which time Hydrus was designated to take over sales of electrical cables, although, Gray testified, "the companies were separate on paper . . . some of the homework hadn't been done as far as transferring things back and forth." Norton finally left Integral in the latter part of January, 1979, and took employment with Tamaqua Cable Company, and the parties appear in agreement that at that time Integral Corporation "had ceased making sales of irrigation cable," a function taken over by Hydrus, under a transfer which stipulated that, "Integral Corporation will continue as a separate company in the manufacture and sale of underground cable products [cable con]."

It is the general rule ". . . that courts will not because of stock owner-

ship or interlocking directorship disregard the separate legal identities of corporations, unless such relationship is used to defeat public convenience, justify wrongs, such as violation of the anti-trust laws, protect fraud, or defend crime." *State v. Swift & Co.*, 187 S.W.2d 127, 131–2 (Tex.Civ.App. Austin 1945, writ ref'd). It is also a general rule that the separate entity of corporations will be observed by the courts, even in instances where one may dominate or control the other, or may even treat it as a mere department, instrumentality, or agency of the other. *Associates Development Corporation v. Air Control Products, Inc.*, 392 S.W.2d 542, 544 (Tex.Civ.App. Austin 1965, writ ref'd n. r. e.); *State v. Swift & Co., supra; Wright Hydraulics, Inc. v. Womack Machine Supply Company*, 482 S.W.2d 34, 36 (Tex.Civ.App. Fort Worth 1972, no writ).

■ An agreement by an employee not to compete with his employer after termination of the employment ". . . is in restraint of trade and will not be enforced in accordance with its terms unless the same are reasonable." *Weatherford Oil Tool Company v. Campbell*, 161 Tex. 310, 340 S.W.2d 950 (1960). The record does not show that the Norton contract was expressly transferred out of Integral Corporation, and neither Hydrus Corporation nor Eads Company is a party to this lawsuit seeking to enforce any claim of competition in violation of the contract.

■ The test usually guiding the courts in determining validity of a covenant such as Norton made with the original Eads Company, now by change of name called Integral, is whether the covenant imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer. *Weatherford Tool, supra.* Integral is no longer in the business of selling irrigation cable and controls; therefore, Norton could not be in competition in this aspect of the business, which, as earlier observed was transferred to Hydrus Corporation, not a party to this suit.

■ Where an injunction prohibits the former employee from engaging in business activities in which the employer is not engaged, the injunction is too broad and should be modified. *Haig v. Gittings*, 260 S.W.2d 311, 312 (Tex.Civ.App. Dallas 1953, no writ); 61 A.L.R.3d 397, 491–2. Under the facts of this case Integral Corporation is entitled to enforce its right to preclude competition by Norton in the limited aspects of its business; that is, in manufacture and sale of "cable con", the underground cable, to the "center pivot sprinkler industry," as specified in the contract of 1975. Integral may not be allowed to enforce rights which Hydrus may have, if any, under the contract to prevent sale of irrigation cable and controls, because Hydrus Corporation is not a party to this suit seeking any redress. *Rimes v. Club Corporation of America*, 542 S.W.2d 909 (Tex.Civ.App. Dallas 1976, writ ref'd n. r. e.).

The injunctive order of the trial court temporarily enjoined and restrained Appellant Norton from (1) competing with Integral Corporation "in the business of manufacturing or acting as a manufacturer or sales representative for the sales of electrical equipment in the center pivot sprinkler industry . . ." and (2) from using or disclosing confidential information or trade secrets concerning the business of Integral Corporation.

It is undisputed that Integral Corporation is presently engaged only in the business of manufacture and sale of "cable con," or underground cable, used in the center pivot sprinkler industry.

We are aware of the rule that since this appeal is from an order granting a temporary injunction, the order should not be reversed unless there be shown an abuse of discretion. Except in respects already pointed out, we perceive no abuse of discretion by the trial court.

We conclude that the order is too broad under the undisputed facts disclosed by the

record. Integral corporation is engaged only in a part of the field of supplying electrical cable and other devices to the center point pivot sprinkler industry, and the order undertakes to enjoin Norton from activities that do not compete with Integral Corporation.

The order of the trial court is modified to restrain appellant from manufacture and sale of "cable con", the underground cable, to the center point pivot sprinkler industry and from disclosing confidential information or trade secrets of Integral Corporation.

As modified the judgment of the trial court is affirmed.