**MOLEX, INCORPORATED,**
Plaintiff-Appellee,

v.

**James NOLEN and James Nolen d/b/a Western Cable, Defendant-Appellant.**

No. 84–1332.

United States Court of Appeals,
Fifth Circuit.

May 6, 1985.

Mark A. Nacol, John G. Tatum, Dallas, Tex., for defendant-appellant.

Locke, Purnell, Boren, Laney & Neely, C. Michael Moore, Nancy A. Strehlow, Dallas, Tex., for plaintiff-appellee.

Before GEE, POLITZ and WILLIAMS, Circuit Judges.

PER CURIAM:

Nolen appeals the award of an injunction against him, advancing various contentions that we discuss below.

### Facts

Molex Incorporated, a Delaware corporation with its principal place of business in Illinois, makes cable assemblies. In 1978, Molex hired James Nolen, a Texas citizen, as its sales representative in the Dallas-Fort Worth area. Tandy Corporation is a large electronics firm located in that area. Nolen's job required him to try to sell Molex's cable assemblies to Tandy, which he succeeded in doing. Once Tandy was established as a Molex customer, Nolen, as the Molex sales representative responsible for the Tandy account, was also responsible for maintaining a good relationship between the two companies.

In mid-1980, Molex began to have problems delivering its cable assemblies to Tandy. In November of that year, Nolen had formed a company first called Western Controls, and later called Western Cable (Western). Through Western, Nolen sold cable assemblies directly to Tandy—assemblies made from Molex parts. Nolen paid for the parts with checks signed "James Baucom." There was no "James Baucom" at Western; Nolen admits to forging all of these signatures. Nolen also used the name "James Baucom" when selling the Western cable assemblies to Tandy. These

(and other) deceptions were necessary because Nolen had omitted to resign from Molex before beginning his career as the sole proprietor of Western. His double life thus enabled Nolen to receive a commission from Molex for the Molex parts he sold to himself as Western, and then to receive the profits from the cable assemblies he sold to Tandy; his knowledge of Molex's pricing made it possible for Nolen (acting as Western) to undersell Molex. On occasion, Nolen charged Molex for business lunches with his doppelganger James Baucom; "Baucom" was leasing cable manufacturing tools from Molex.

In July 1981, having established Western as Tandy's cable assembly supplier, Nolen left Molex. He continued to purchase Molex parts, and to sell cable assemblies to Tandy, as "Baucom;" between November 1980 and December 1983, Nolen's sales of cable assemblies totalled $1.7 million.

When Molex discovered Nolen's perfidy, it brought an action against him alleging diversion of corporate opportunity, unfair competition, and interference with contractual and business relationships. Molex sought money damages and an injunction barring Nolen from dealing with Molex customers and from disclosing Molex information or parting with Molex property. Nolen defended this action by various means, means that included perjury; he now admits to having lied at his deposition. The case was tried to a jury. It found for Molex and awarded Molex both actual and exemplary damages. Molex is unlikely to collect these damages because Nolen has taken voluntary bankruptcy. The trial court entered judgment on the jury's verdict and issued an injunction permanently barring Nolen from selling cable assemblies to Tandy. Nolen now appeals both the judgment and the injunction.

### Analysis

■ Nolen first contends that the trial court's injunction is impermissibly vague, overbroad, and beyond the scope of the pleadings. Except in one respect, this contention is meritless. Nolen's first assertion of vagueness is grounded on the trial court's failure to define "cable assemblies." No definition was necessary; Nolen knows full well what cable assemblies are. The trial court was required simply to "frame its injunction so that those enjoined will know what conduct the court has prohibited." *Meyer v. Brown & Root Construction Co.*, 661 F.2d 369, 373 (5th Cir.1981), *citing International Longshoremen's Assoc. v. Philadelphia Marine Trade Assoc.*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967). This the trial court did.

■ Nolen argues that the injunction is overbroad because it is not limited to the specific Tandy divisions to which Nolen sold Molex cable assemblies. He provides no authority for this argument, probably because there is none. Texas courts have routinely permitted injunctions to issue barring employees from soliciting the customers of their former employers; *see, e.g.,* *Stocks v. Banner American Corp.*, 599 S.W.2d 665, 668 (Tex.Civ.App.—Texarkana 1980, no writ); *Johnson v. American Speedreading Academy, Inc.*, 526 S.W.2d 163, 166 (Tex.Civ.App.—Dallas 1975). This Court approved such an injunction in *Zoecon Industries v. American Stockman Tag Co.*, 713 F.2d 1174, 1180 (5th Cir.1983). The trial court was thus fully within its discretion in barring Nolen from selling cable assemblies to Tandy, indubitably a customer of Nolen's former employer.

Nolen also argues that the injunction is overbroad because it is not limited to those sorts of cable assemblies manufactured by Molex. He cites *Norton v. Integral Corp.*, 584 S.W.2d 932, 935 (Tex.Civ.App.—Austin, 1979), in support of this argument. In *Norton*, however, the language held overbroad was "electrical equipment in the center pivot sprinkler industry," 584 S.W.2d at 935. The *Norton* court ordered it changed to "cable con." "Cable con" is obviously no more specific, and no narrower, than "cable assembly." Nolen's argument is therefore without supporting authority; it was not error for the trial court to bar him from selling "cable assemblies."

Nolen further contends that the injunction should be lifted because it deprives him of a livelihood and because it is against the public interest. Both contentions are frivolous, and patently unworthy of serious consideration. It is also unnecessary to discuss whether (or how) the injunction goes beyond the scope of the pleading: the assertion appears only in the caption to this section of Nolen's brief and is not mentioned at all in the text.

■ We do find merit in one complaint of vagueness: the injunction forbids Nolen to deal in various respects with "Tandy Corporation or any affiliate or subsidiary of Tandy Corporation...." The phrase is mildly ambiguous; we reform it to read "or any affiliate or subsidiary of Tandy Corporation *as of the date of this judgment, March 9, 1984.*" Except in this minor respect, we conclude that the trial court's injunction was neither vague nor overbroad, and no reasonable reader of the record could conclude that it went beyond the scope of the pleadings.

■ Nolen next assigns as error the trial court's grant of a permanent injunction; he contends that the injunction should have been limited in duration. The only relevant authority cited in connection with this contention is *Hyde Corp. v. Huffines,* 158 Tex. 566, 314 S.W.2d 763 (1958). Nolen imaginatively construes *Hyde* to mandate the grant of a limited, rather than a permanent, injunction whenever the defendant has requested one. Both common sense and the actual language of *Hyde* refute this novel construction:

> The trial judge upon proper findings has correctly determined that this is a case for injunctive relief. He has ordered *that the usual equitable order issue, e.g. the perpetual injunction.* It would seem to follow that if an injunction of limited duration be substituted therefore ..., an abuse of discretion in issuing the perpetual injunction would have to be shown. No such showing was made in this case.

314 S.W.2d at 780–81 (citation omitted) (emphasis added). Nolen has made no such

showing either. His conduct is indistinguishable in any relevant aspect from that of the defendants in *Zoecon* and in *Elcor Chemical Corp. v. Agri-Sul, Inc.,* 494 S.W.2d 204 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.); permanent injunctions were upheld in both cases. These cases, and the absence of countervailing authority, clearly indicate that the trial court was well within its authority in granting a permanent injunction to Molex.

Nolen's last attack on the injunction is similarly baseless; his assertion that the injunction was issued without a finding of irreparable harm is simply wrong. The trial court explicitly made such a finding.

■ Nolen makes various assignments of error in connection with the trial court's finding of irreparable harm. The first, that there was no such finding, is refuted above. The last, that the injunction is defective absent a finding of irreparable harm, is irrefutable as a general proposition but inapplicable to this case. The rest are not entirely clear, but seem to allege first, that no evidence existed to support a finding of irreparable harm, and second, that the issue of irreparable harm should have been submitted to the jury. The first contention is frivolous. Although Nolen acknowledges irreparable harm to be a question of fact, he appears to believe that our review of the trial court's finding of this fact is governed by something other than the clearly erroneous standard of Rule 52(a), Fed.R.Civ.P. His belief is itself clearly erroneous. *Bryan v. Kershaw,* 366 F.2d 497, 499 (5th Cir.1966), *cert. denied,* 386 U.S. 959, 87 S.Ct. 1030, 18 L.Ed.2d 108 (1967). The trial court's finding is clearly correct. Under Texas law, the irreparable harm required for a permanent injunction is defined as "an injury which cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard." *Parkem Industrial Services, Inc. v. Garton,* 619 S.W.2d 428, 430 (Tex.Civ.App.—Amarillo 1981). Nolen's bankruptcy meets the first prong of his definition; Texas cases construe "cannot be compensated" to include situations in

which the "defendant is incapable of responding in damages." *R.H. Sanders Corp. v. Haves,* 541 S.W.2d 262, 265 (Tex. Civ.App.—Dallas 1976, no writ), *citing County of Harris v. Southern Pacific Transportation Co.,* 457 S.W.2d 336, 339 (Tex.Civ.App.—Houston 1970, no writ); *Grayson Enterprises, Inc. v. Texas Key Broadcasters, Inc.,* 388 S.W.2d 204, 208 (Tex.Civ.App.—Eastland 1965, no writ).

Nolen's theft of Molex's customer Tandy meets the second prong of the definition. In *Jeter v. Associated Rack Corp.,* 607 S.W.2d 272 (Tex.Civ.App.—Texarkana 1980), *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981), the court affirmed permanent injunctive relief on facts very similar to these, stating "[i]t is our further opinion that future damages would have been difficult if not impossible to ascertain and thus the trial court was justified in granting injunctive relief." 607 S.W.2d at 278. Although they do not contain language paralleling that of *Jeter,* cases such as *Zoecon, Hyde,* and *Elcor,* in which permanent injunctive relief was affirmed, plainly support the proposition that irreparable harm may be shown in customer theft situations. Given these authorities, and the peculiarly aggravated circumstances of this case, it cannot be said that the trial court's finding of irreparable harm was clearly erroneous.

■ Nolen next complains that the issue of irreparable harm should have been submitted to the jury; as a question of fact it certainly could have been. *Miller v. Lone Star Tavern, Inc.,* 593 S.W.2d 341, 344 (Tex.Civ.App.—Waco 1979). Our review of the record reveals, however, that Nolen neither requested submission of the issue to the jury nor objected to the absence of the issue in the special interrogatories given to the jury. Rule 49(a), Fed.R.Civ.P., therefore bars Nolen's assignment of error on this point. That rule provides as follows:

> The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. *If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury.* As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

The Rule is unambiguous and this Court has given its words their plain meaning. *See, e.g., John R. Lewis, Inc. v. Newman,* 446 F.2d 800, 804–05 (5th Cir.1971). Under Rule 49(a) and our cases construing it, Nolen waived his right to a jury trial on the issue of irreparable harm.

Nolen's attack on the sufficiency of the evidence supporting the jury findings against him is completely without merit. The standard of review used by this Court to evaluate allegations of insufficient evidence was explained in a recent case:

> The role of this Court is not to adjudicate the facts de novo, nor is it our task to second-guess the conclusion of the members of the jury who had the important opportunity to evaluate the demeanor of the witnesses. The appellants urge that there is substantial evidence to support judgment in their favor. This may or may not be the case, but the contention is not germane. The record shows clear and substantial evidence to support the jury's findings for appellee. The facts and inferences do not "point so strongly and overwhelmingly in favor of one par-

ty that the Court believes that reasonable men could not arrive at a contrary verdict...." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). The trial judge therefore acted properly in denying the motion for directed verdict and in entering judgment consistent with the jury's verdict.

*Thomas v. City of New Orleans,* 687 F.2d 80, 83 (5th Cir.1982); *see also NCH Corp. v. Broyles,* 749 F.2d 247 (5th Cir.1985). Nolen points to no specific portions of the record as supporting his contentions. Our review of it reveals that in no respect does it fail to support the jury findings. Those findings, and the relevant evidence are summarized as follows.

■ a) Nolen acquired trade secrets or confidential business information from Molex. The information Nolen acquired from Molex about Tandy and other Molex customers falls within the category of either trade secrets or confidential information, as does the information he acquired about Molex's pricing. *Zoecon, Hyde, Elcor, supra.*

b) Nolen misappropriated and used Molex's trade secrets or confidential business information for his own use or benefit. Nolen attacked this finding by arguing that he didn't know the information was secret. The simple answer to Nolen's argument is that the jury was not required to believe him and did not.

■ c) Nolen wrongfully disclosed Molex's trade secrets or confidential information to others. Nolen shared his information about Tandy with his employees at Western.

■ d) Nolen's misappropriation and use of Molex's trade secrets or confidential information was the proximate cause of loss to Molex and benefit to Nolen. Molex lost Tandy as a customer, and Nolen gained Tandy as a customer.

■ e) Nolen had a fiduciary relationship with Molex. Under Texas law, "[t]he term includes those informal relations which exist whenever one party trusts and relies upon another." *Kinzbach Tool Co.,*

*Inc. v. Corbett-Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 512–13 (1942). The Texas Supreme Court held a salesman to have a fiduciary relationship with his employer in *Kinzbach.* Molex obviously trusted and relied on Nolen, as the sales representative responsible for the Tandy account, in its dealings with Tandy.

f) Nolen breached his fiduciary duty to Molex. On this record, it would have been astounding had the jury found otherwise.

g) Nolen's breach of his fiduciary duty to Molex during the term of his employment with Molex was the proximate cause of loss or damage to Molex, or benefit or value to Nolen. Again, this proposition is too obvious to require discussion.

■ h) The sum of $112,500 would reasonably compensate Molex for its loss or for Nolen's profits. The trial court correctly instructed the jury that it could award damages to Molex on the "reasonable royalty" theory. *See Universal Computing Co. v. Lykes-Youngstown Corp.,* 504 F.2d 518, 536–39 (5th Cir.1974); *Sikes v. McGraw Edison Co.,* 665 F.2d 731, 737 (5th Cir.), *cert. denied,* 458 U.S. 1108, 102 S.Ct. 3488, 73 L.Ed.2d 1369 (1982). Nolen's total sales were $1.5 million; the jury awarded Molex 7½ percent of that amount, or $112,500. This award was consistent with expert testimony presented by Molex; it was also approximately equal to the total amount actually received by Nolen from Molex and Western during the relevant period. There was thus ample evidence to support the award.

i) Nolen's actions were maliciously or wantonly or oppressively done. Nolen's assertion that he acted in good faith merits no discussion.

■ j) Molex should be awarded $250,000 as exemplary damages for Nolen's actions. In *Russell v. Truitt,* 554 S.W.2d 948 (Tex.Civ.App.—Ft. Worth 1977, writ ref'd n.r.e.), an action for breach of fiduciary duty, the court affirmed exemplary damages of $55,000, nearly seven times the actual damages of $8,000. In so doing, the court stated,

The question of excessiveness of exemplary damages depends on the facts of the particular case and is largely within the discretion of the jury. Among the factors to be considered are "the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety." *Cain v. Fontana,* 423 S.W.2d 134, 139 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.); *Schutz v. Morris,* 201 S.W.2d 144, 147 (Tex.Civ.App.—Austin 1947, no writ).

554 S.W.2d at 955. The award in this case, twice the actual damages, is certainly not so large as to "indicate that it is a result of passion, prejudice or corruption, or that evidence has been disregarded." *Crutcher-Rolfs-Cummings, Inc. v. Ballard,* 540 S.W.2d 380, 389 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). It is affirmed.

### Conclusion

The judgment of the trial court is modified in the respect noted at page 5 and, as modified, is

AFFIRMED.