**TAYLOR PUBLISHING COMPANY,**
Plaintiff,

v.

**JOSTENS, INC., Defendant.**

No. 4:97CV11.

United States District Court,
E.D. Texas,
Sherman Division.

Jan. 14, 1999.

**364**

George C. Lamb, III, Tracy L. Silva, Baker & Botts, Dallas, TX, R. Hewitt Pate, Hunton & Williams, Richmond, VA, David M. Aronowitz, Dublin, OH, for plaintiff.

Jeffrey J. Keyes, James Long, Briggs & Morgan, Minneapolis, MN, Clyde Moody Siebman, Carol Siebman, Siebman & Siebman, Sherman, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

PAUL N. BROWN, District Judge.

### Introduction

Plaintiff, Taylor Publishing Company, and Defendant, Jostens, Inc., are competitors in the manufacture and sale of scholastic yearbooks. The major competitors in the yearbook market are Plaintiff, Defendant, Herff–Jones, Lifetouch, and Walsworth. Defendant and Plaintiff hold the number one and number two market positions, respectively.

Plaintiff brought claims for damages against Defendant alleging that Defendant violated federal law by attempting to monopolize the national yearbook market in violation of Section 2 of the Sherman Antitrust Act and by engaging in price discrimination in violation of the Robinson–Patman Act. Additionally, Plaintiff claimed Defendant violat- ed Texas state law by tortiously interfering with Plaintiff's contracts, by conspiring and knowingly participating in the breach of fiduciary duties owed to Plaintiff by Plaintiff's former employees, and by engaging in unfair competition.

For purposes of Plaintiff's attempted monopolization claim, the parties agreed that the relevant geographic market was limited to sales within the United States, however, the parties disagreed as to the relevant product market. Plaintiff contended that the product market was limited to "yearbooks," those products prepared by students, with some teacher input, that incorporate individual student pictures as well as candid shots of various activities within the school. Plaintiff argued that "picture books," those products usually limited to individual student pictures and often prepared by teachers with little or no input from students, should not be included in the product market. On the other hand, Defendant claimed the relevant product market included both yearbooks and picture books.

The case was tried with a jury beginning on May 4, 1998. At trial, Plaintiff focused on its attempted monopolization claim. Plaintiff claimed that Defendant planned to eliminate Plaintiff from the market and implemented such plan by the use of many predatory practices. The predatory conduct asserted by Plaintiff included that Defendant: (1) engaged in sham and predatory pricing; (2) raided Plaintiff's sales force; (3) acquired Plaintiff's confidential information by illegal means; (4) interfered with Plaintiff's contracts; and (5) committed predatory disparagement of Plaintiff. The remainder of Plaintiff's causes of action were based on these same acts.

On May 8, Defendant orally moved and submitted a written motion for judgment as a matter of law (collectively "pre-verdict motion"), which the Court took under advisement. On May 12, the last day of trial, the Court denied Defendant's pre-verdict motion, and the case was submitted to the jury. The jury returned with a verdict containing findings against Defendant on all claims except Plaintiff's state law claim that Defendant tor-

tiously interfered with contracts between Plaintiff and its customers. On June 12, 1998, the Court entered judgment only upon the jury's verdict as to Plaintiff's attempted monopolization claim because all other claims on which the jury found in favor of Plaintiff overlapped this claim.

Defendant files the current motion and renews its Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50.[1] Defendant contends Plaintiff's case fails on the following four essential grounds: (1) Plaintiff failed to offer evidence of legally cognizable predatory conduct to sustain an attempt to monopolize claim or Plaintiff's state law claims; (2) Plaintiff failed to show a dangerous probability of monopolization; (3) Plaintiff's case was devoid of minimal proof of causation of damage, fact of injury, or antitrust injury; and (4) Plaintiff's damage claim which went to the jury was fraught with error and based on guesswork and speculation.

In its response, Plaintiff asserts that due to procedural defects, Defendant waived the right to assert the present motion. In the absence of a finding of waiver, Plaintiff urges the Court to deny Defendant's motion because the evidence supports the jury's verdict.

### Legal Standard for Judgment as a Matter of Law

 Judgment as a matter of law is proper if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED.R.CIV.P. 50(a)(1). The standard of review for judgment as a matter of law is as follows:

> [T]he court should consider all of the evidence—not just that evidence which supports the non-mover's case—in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [judgment as a

matter of law] is proper. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, [judgment as a matter of law] should be denied.... [I]t is the function of the jury as the traditional finder of facts, and not the court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969), overruled on other grounds, *Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331 (5th Cir.1997).

### Discussion

As a preliminary matter, the Court will address Plaintiff's contention that Defendant waived its right to assert the pending motion, then the Court will discuss Defendant's motion.

### I. Plaintiff's Arguments of Waiver

#### A. Plaintiff's Arguments

Plaintiff claims Defendant waived the present Motion for Judgment as a Matter of Law due to two procedural defects. First, Plaintiff complains that Defendant's pre-verdict motion was not made or renewed at the close of all the evidence, therefore, the motion now pending before the Court is waived. Second, Plaintiff contends that Defendant's motion raises matters that were not stated as grounds in the pre-verdict motion. Two significant examples Plaintiff points out are that Defendant's pre-verdict motion did not challenge the sufficiency of the evidence regarding predatory conduct asserted by Plaintiff nor the amount of damages awarded by the jury. Because these matters were not raised in the pre-verdict motion, Plaintiff argues they cannot now be considered by the Court.

#### B. Applicable Law

Rule 50 of the Federal Rules of Civil Procedure provides in part:

> be granted in Defendant's favor, the Court need not address Defendant's alternative requests.

---

1. Alternatively, Defendant's motion seeks a new trial or an order of remittitur. Because the Court finds judgment as a matter of law should

(a)(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

(b) If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.

In evaluating the procedural requirements of Rule 50, the Fifth Circuit holds that the failure to request judgment as a matter of law at the close of all the evidence waives judgment as a matter of law after the jury verdict. *See Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1089 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1073, 140 L.Ed.2d 132 (1998). However, in *Tamez,* the Fifth Circuit acknowledged an exception to this rule and noted the following facts as being pertinent to evaluating whether a de minimis exception from noncompliance with Rule 50(b) exists:

(1) we concluded that allowing the motion would satisfy the purposes (if not the letter) of Rule 50; (2) the trial court had reserved, not denied, a motion for [judgment as a matter of law] at the close of the plaintiff's case; (3) the defendant called no more than two witnesses before closing; (4) only a few minutes elapsed between the motion for [judgment as a matter of law] and the conclusion of all the evidence; and (5) the plaintiff introduced no rebuttal evidence.

*Tamez,* 118 F.3d at 1090. Another requirement of Rule 50 provides that a post-trial motion for judgment as a matter of law cannot assert a ground not included in a pre-verdict motion. *Dimmitt Agri Indus., Inc. v. CPC Intern. Inc.,* 679 F.2d 516, 521 (5th Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983). The rationale for this rule is to avoid ambushing the trial court and opposing counsel. *Id.*

### C. Defendant's Response

Regarding Plaintiff's first contention, Defendant responds that it fully complied with all requirements for the preservation of its right to judgment as a matter of law and outlines the following procedural facts. On May 8, 1998, the Court stated in response to Defendant's inquiry about scheduling the argument on Defendant's pre-verdict motion that the Court would "consider for the record that your motion is timely filed, and that it probably would be better for my schedule to consider after we finish the evidence." R. at 1142:24–143:2. At that time, it was anticipated that all of the evidence would be finished that afternoon. Later that day, after Defendant finished its defense and Plaintiff finished its rebuttal evidence, it became apparent that some short video depositions, which Plaintiff was permitted to offer out of order as part of its case in chief, were not ready. In order to efficiently utilize time, the Court heard Defendant's pre-verdict motion and Plaintiff's response, and took the matter under advisement until the next and final day of trial, May 12, 1998.

On May 12, the Court conducted the jury charge conference and addressed the issue of the remaining deposition testimony from Plaintiff's case in chief. Plaintiff's counsel discussed, in detail, the evidence that would be presented by way of this deposition testimony. At the conclusion of this discussion, the Court denied Defendant's pre-verdict motion, the jury was brought into the courtroom, Plaintiff presented the brief video deposition testimony, and the case proceeded to final argument.

Defendant contends that from the point that the Court denied its motion, the only evidence presented was Plaintiff's offer of video deposition testimony of three witnesses, which lasted a period of approximately forty minutes and the content of which had been previously disclosed to the Court. Regarding Plaintiff's second argument, Defendant reiterates the arguments it made in its pre-verdict motion as to the insufficiency of Plaintiff's evidence.

### D. Court's Analysis

■ Applying the factors discussed above, the Court finds that this case falls within the de minimis exception from technical compliance with Rule 50(b): allowing Defendant's motion would satisfy the purposes of Rule 50; the Court reserved ruling on Defendant's pre-verdict motion until after all of Defendant's evidence, Plaintiff's rebuttal evidence, and almost all of Plaintiff's case in chief; Defendant called no more witnesses after urging the motion; only a short period of time elapsed between the Court's denying Defendant's motion and the conclusion of all the evidence; and at the time Defendant argued its motion, Plaintiff's rebuttal evidence had been offered and the Court and parties were aware of the substance of the remaining evidence of Plaintiff's case in chief. Throughout trial, the Court made many accommodations to all parties regarding the order of evidence. Due to these adjustments, when asked by Defendant when the Court would allow Defendant to offer its pre-verdict motion, the Court responded that it would "consider for the record that your motion is timely filed." R. at 1142:24–143:2.

Additionally, the Court is of the opinion that Plaintiff's second argument lacks merit. To the extent considered by the Court, Plaintiff was fully apprised of the arguments Defendant states in its present motion. Since the Court finds that Defendant's Motion for Judgment as a Matter of Law is properly before the Court, the Court will address the merits of the motion.

### II. Defendant's Motion for Judgment as a Matter of Law

Again, Defendant's motion alleges that all of Plaintiff's claims fail because Plaintiff (1) failed to offer evidence of legally cognizable predatory conduct to sustain an attempt to monopolize claim or Plaintiff's state law claims; (2) failed to show a dangerous probability of monopolization; (3) lacked proof of causation of damage, fact of injury, or antitrust injury; and (4) asserted damage claims that were fraught with error and based on guesswork and speculation. Because the Court agrees with Defendant's first two arguments, it is unnecessary to address Defendant's remaining arguments. However, the Court will also briefly discuss Defendant's argument that Plaintiff failed to prove causation of damages.

### A. Attempted Monopolization Under Section 2 of the Sherman Act

#### 1. The Applicable Law

■ An attempted monopoly in violation of Section 2 of the Sherman Act consists of 3 elements: (1) that the defendant engaged in predatory or anticompetitive conduct, (2) that the defendant specifically intended to acquire monopoly power in the relevant market, and (3) a dangerous probability that an actual monopoly position will ultimately be achieved. *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). In *Spectrum Sports,* the Supreme Court explained the intent of the Sherman Act as follows:

> The purpose of the Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market. The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself.... [Section] 2 makes the conduct of a single firm unlawful only when it actually monopolizes or dangerously threatens to do so.

*Id.* at 458–59, 113 S.Ct. 884.

#### 2. Court's Analysis

In short, Defendant contends that Plaintiff's Section 2 claim fails as a matter of law because Plaintiff presented insufficient evidence of substantial predatory conduct which created a dangerous probability of monopolization. While Defendant also claims that Plaintiff presented insufficient evidence of specific intent to monopolize, the Court finds that the evidence presented at trial was sufficient for the jury to find specific intent. Therefore, the Court will only address Defendant's contentions under elements one and three of an attempt to monopolize claim.

##### a. Predatory or Anticompetitive Conduct

■ The first element of an attempted monopolization claim requires Plaintiff to

show that Defendant engaged in anticompetitive or predatory conduct designed to further an intent to monopolize. "Predatory or anticompetitive conduct is that which unfairly tends to be exclusionary or tends to destroy competition." *Great W. Directories v. Southwestern Bell Tel. Co.*, 63 F.3d 1378, 1385 (5th Cir.1995), *withdrawn and superseded in part*, 74 F.3d 613 (1996). "Exclusionary conduct is conduct that tends to exclude or restrict competition and is not supported by a valid business reason." *Id.* The Tenth Circuit requires that "[i]n order to rise to a § 2 violation, however, the exclusionary conduct must appear reasonably capable of contributing *significantly* to creating or maintaining monopoly power." *Instructional Sys. Dev. Corp. v. Aetna Cas. and Sur. Co.*, 817 F.2d 639, 649 (10th Cir.1987) (emphasis added); *See also*, PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 782 (1996).

At trial, Plaintiff claimed that Defendant engaged in the following anticompetitive activities: (1) sham pricing; (2) predatory pricing; (3) raiding Plaintiff's sales force; (4) acquiring Plaintiff's confidential information; (5) interfering with Plaintiff's term agreements with customers; and (6) predatory disparagement.

Defendant argues that Plaintiff's minimal evidence of predatory conduct, even when aggregated, is not sufficient to constitute predatory conduct in violation of Section 2. The Court will address each area of conduct.

### i. Sham Pricing or Upgrading

■ "Sham pricing" was the predominant type of conduct Plaintiff pointed to in support of its claim of predatory, anticompetitive conduct by Defendant. Plaintiff claimed that Defendant's sales representatives made false or sham price quotes in order to win yearbook accounts from Plaintiff without the intention of fulfilling the contracts at the quoted prices. Plaintiff contended that after Defendant entered into contracts with the converted customers, it then charged higher prices to the customer. Plaintiff offered Plaintiff's Exhibit 274, a memorandum written by one of Defendant's personnel that described the process of upgrading as providing the lowest price to a customer in order to obtain the business and

then reselling a new program to this customer after the customer has committed to having Defendant publish the yearbook. Additionally, Plaintiff identified other evidence of training programs on upgrading that were offered by Defendant to its sales representatives. Plaintiff claimed that over the 4-year period of 1995 to 1998, 840 of its former customers were victims of Defendant's sham pricing and that such conduct caused $9,602,-000 in damages to Plaintiff. *See Pl.'s Ex. 301.*

While Plaintiff characterizes this conduct as "sham" or "false pricing," Defendant contends this conduct is known as "upgrading" in the industry and is the process of selling additional yearbook features to customers. The sale of additional features results in a final invoice price greater than the original contract price, however, Defendant argues this is not fraudulent or illegal, anticompetitive conduct. In its Motion for Judgment as a Matter of Law, Defendant offers three reasons why Plaintiff's sham pricing claim fails to constitute predatory conduct. First, Defendant states that no Section 2 attempt to monopolize case has ever based liability upon a predatory act of "sham pricing," rather, as stated in *Abcor Corp. v. AM International, Inc.*, 916 F.2d 924, 928 (4th Cir.1990), antitrust claims based on pricing, even deceptive pricing, require below-cost pricing not mere deception. Second, for a jury to have found that Defendant engaged in sham pricing, Plaintiff had to prove that Defendant's acts constituted fraud under Texas law. Finally, Defendant argues that upgrading is an ordinary and integral part of the yearbook business that allows yearbook companies to sell additional features to customers and, therefore, does not constitute predatory conduct.

The Court finds that Plaintiff's sham pricing claim is best characterized as a fraud or misrepresentation claim rather than a predatory pricing claim. While Plaintiff offered evidence regarding the upgrading strategies and training provided within Defendant's company, Plaintiff failed to offer evidence that any customer was given a contract price which misrepresented what the customer would be receiving with that price or which

deceptively purported to include features that later had to be purchased by paying more money. Rather, the testimony from customers who switched from Plaintiff to Defendant established that a final invoice price that exceeded the original contract price was a result of added features and changes to the product. R. at 253:18–256:11. Absent evidence that Defendant's original contracts misrepresented what the customer would be receiving for the stated price or that Defendant falsely quoted prices to the customer, the Court finds that Plaintiff failed to prove that Defendant's actions constituted predatory, anticompetitive conduct.

### ii. Predatory Pricing

A claimant alleging predatory pricing in violation of Section 2 of the Sherman Act must establish two elements for recovery. First, a plaintiff must prove that a rival's low prices are below an appropriate measure of the rival's costs. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). The second element of a predatory pricing claim requires the plaintiff to demonstrate that the rival had a dangerous probability of recouping its investment in below-cost prices. *Id.* at 224, 113 S.Ct. 2578. "For recoupment to occur, below-cost pricing must be capable, as a threshold matter, of producing the intended effects on the firm's rivals, whether driving them from the market, or, . . . causing them to raise their prices to supracompetitive levels . . . ." *Id.* at 225, 113 S.Ct. 2578. If market circumstances or deficiencies in proof would bar a reasonable jury from finding that the scheme alleged would likely result in driving competitors from the market, the plaintiff's case fails. *Id.* at 226, 113 S.Ct. 2578.

While the Fifth Circuit recognizes two different cost measures for purposes of a predatory pricing claim, the cost measure utilized by Plaintiff in this case was average variable cost ("AVC"). Plaintiff calculated Defendant's AVC to be 65%; thus, any discounting by Defendant at a rate greater than 35% would be discounting below its AVC.

Plaintiff argued that as part of Defendant's attempt to monopolize the yearbook market, Defendant priced its yearbooks to customers at prices below its AVC, thus taking a loss on the yearbook. Plaintiff offered evidence that Defendant sold below its AVC to 66 customers over the 4–year period of 1995 to 1998 and that from this, Plaintiff's actual losses and future lost profits for a 10–year period amounted to $591,000.[2]

Defendant's Motion for Judgment as a Matter of Law contests Plaintiff's predatory pricing claim on numerous grounds, including the argument that Plaintiff offered insufficient evidence of predatory pricing and that Plaintiff offered no evidence to show recoupment.

The Court finds that Plaintiff's evidence on predatory pricing fails to support a finding of anticompetitive conduct in violation of the Sherman Act. First, through its accounting expert Bryan Jones ("Jones"), Plaintiff offered evidence that throughout the entire United States, Defendant sold below its AVC to 27 of Plaintiff's former customers in 1995, 26 in 1996, and 13 in 1997. Since Plaintiff annually serviced 7,000 schools on average, this evidence amounts to a customer loss of less than 1% of Plaintiff's annual sales. The Court finds that with an impact of less than 1%, Defendant's below-cost pricing was not capable, as a threshold matter, of driving its competitors from the market. Further, Plaintiff's lack of evidence on recoupment is fatal to its predatory pricing claim. Deficiencies in proof on these points bar a finding that the scheme alleged would likely result in driving competitors from the market; therefore, no reasonable jury could have found that the evidence supported a finding of anticompetitive conduct based on predatory pricing.

### iii. Predatory Hiring

In *Associated Radio Service Co. v. Page Airways, Inc.*, 624 F.2d 1342 (5th Cir. 1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1740, 68 L.Ed.2d 226 (1981), the Fifth Circuit

---

**2.** While Plaintiff's exhibit 305 indicates Defendant sold below its AVC to 56 customers, R. at 770–71, testimony at trial from both sides indicated the number was 66. Therefore, the Court will use the latter figure in its discussion.

recited the following principles from a treatise on antitrust law:

> Areeda and Turner are adamant in their view that the mere hiring away of employees from a rival is *per se* legal under the antitrust laws.... [However] no similar virtue would redeem efforts to induce such disloyal performance by a rival's employee as disclosure of trade secrets or other private information; [or] steering customers, researchers, or others away from his employer and to the monopolist. [S]uch practices would be grounds for section 2 liability *if the actual effect was significant.*

*Id.* at 1354 (citations omitted) (emphasis added). In *Page,* the Fifth Circuit found an antitrust violation in a narrowly framed market based on evidence that the defendant induced the plaintiff's employees to act disloyally in steering business toward the defendant while the employees were still employed by the plaintiff. *Id.* The Fifth Circuit found that the evidence allowed the jury to find that gross impropriety occurred. *Id.* at 1355.

In the present case, Plaintiff offered evidence that Defendant hired the following three sales representatives from Plaintiff: Jeff Graffam, Jan Day DeFalco, and Dan DeFalco, who was regarded as a "lynchpin" that would bring $1.4 million in sales to Defendant. Since sales representatives are very important to a yearbook company, Plaintiff contended that Defendant's hiring of Plaintiff's sales representatives was an effective way to put Plaintiff out of business. Additionally, Plaintiff claimed Defendant induced these individuals to reveal confidential information concerning Plaintiff. Plaintiff asserted that it lost 49 customers during 1995 to 1998 due to Defendant's raiding of Plaintiff's sales force and that such loss resulted in actual lost profits and projected lost profits of $664,000 over a 10–year period. *See Pl.'s Ex. 304.*

Defendant argues that Plaintiff offered insufficient evidence of anticompetitive conduct based on the raiding of Plaintiff's sales force. Defendant contends that Plaintiff failed to show that Defendant either induced disclosure of confidential information by Graffam or the DeFalcos or that these representatives steered customers away from Plaintiff and to

Defendant while the representatives were still employed by Plaintiff. Additionally, Defendant argues that Plaintiff failed to show that the actual effect of any conduct by Defendant was significant.

While there was evidence that Defendant had in its possession certain documents created by Plaintiff, the Court is unable to find sufficient evidence that Defendant either induced disclosure of confidential information by Graffam or the DeFalcos or that these sales representatives steered customers away from Plaintiff and to Defendant while the sales representatives were still employed by Plaintiff. Moreover, the Court finds the loss sustained by Plaintiff was insignificant. Evidence at trial showed that Plaintiff had over 200 sales representatives; therefore, the loss of 3 represented 1.5% of its sales force. Further, less than 1% of Plaintiff's customers, a figure representing 49 of Plaintiff's 7,000 total customers, transferred to Defendant. Additionally, the monetary loss of $664,000 over 10 years represented less than 1% of the approximate $70 million in sales that Plaintiff has in 1 year. The Court finds Defendant's hiring of the 3 representatives had a negligible impact upon Plaintiff's competitive position.

### iv. Acquisition of Confidential Information or Trade Secrets

Although Defendant argues that Plaintiff failed to present sufficient evidence that the information obtained by Defendant was confidential or trade secret information or that Plaintiff was damaged as a result of Defendant's acquisition of some of Plaintiff's confidential information, the Court finds that Plaintiff offered some evidence that Defendant possessed confidential information of Plaintiff. However, the Court is of the opinion that the acquisition of such information by Defendant had an insubstantial effect on Plaintiff. Plaintiff claimed damages in the amount of $1,446,576 from Defendant's acquisition of confidential information. *See Pl.'s Ex. 303.* This amount constitutes only 2% of Plaintiff's total sales in one year. Such impact does not rise to the level of contributing significantly to creating or maintaining mo-

nopoly power; therefore, this conduct cannot support a finding of a Section 2 violation.

### v. Interference with Term Agreements

The jury found that Defendant did not interfere with Plaintiff's term agreements with its customers, and Defendant does not contest this finding.

### vi. Predatory Disparagement

In *Abcor Corp. v. AM International, Inc.*, 916 F.2d 924 (4th Cir.1990), the Fourth Circuit found that isolated incidents of disparagement do not constitute sufficient evidence to support an attempted monopolization claim.

Defendant contends that Plaintiff presented no evidence of disparagement at trial. At best, Defendant states the only testimony which might be considered such was testimony that one of Defendant's sales representatives told a teacher that Plaintiff was having problems with its plant in 1994.

While Plaintiff alleged disparagement by Defendant, in its Brief in Opposition to Defendant's Motion for Judgment as a Matter of Law and For New Trial, Plaintiff failed to support such allegation. Further, the Court is not aware of any damages suffered by Plaintiff as a result of disparagement. Therefore, the Court finds that as a matter of law, the jury could not have based a finding of predatory, anticompetitive conduct on alleged disparagement.

In summary, the Court finds that not one of the instances of improper conduct would lead to Section 2 liability. The analysis remains unchanged when the acts are viewed as a whole. The evidence showed that the aggregated conduct had an insubstantial effect on Plaintiff and does not support the jury's verdict that Defendant attempted to monopolize the yearbook market. Since the Court is of the opinion that Plaintiff failed to prove predatory conduct that unfairly tended to be exclusionary or tended to destroy competition, Plaintiff's attempted monopolization claim fails for lack of this element.

### b. Dangerous Probability of Achieving Monopoly Power

▇▇▇▇ Even though the Court believes Plaintiff's attempted monopolization claim fails for lack of sufficient anticompetitive conduct, the Court also finds that the claim fails for lack of a dangerous probability that Defendant would have achieved monopoly power. As part of Plaintiff's attempted monopolization claim, Plaintiff had to prove there was a dangerous probability that the attempted monopolization would succeed. *Deauville Corp. v. Federated Dep't Stores*, 756 F.2d 1183, 1191 (5th Cir.1985). Monopoly power is the power to control prices or exclude competition. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). In determining whether there is a dangerous probability of monopolization, courts have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). Further, this element is assessed by evaluating the defendant's market share in the relevant market. *Great W. Directories v. Southwestern Bell Tel. Co.*, 63 F.3d 1378, 1385 (5th Cir.1995), *withdrawn and superseded in part*, 74 F.3d 613 (1996).

▇▇▇ Plaintiff contends that Defendant devised and implemented a plan to put Plaintiff out of business. The most significant evidence presented by Plaintiff in support of its claim was the collection of statements by Jack Thornton ("Thornton"), the individual who ran Defendant's yearbook business during the relevant time period, pertaining to Thornton's dream of becoming the only national yearbook company in the industry. Additionally, Plaintiff offered minimal evidence of predatory conduct: (1) that Defendant hired 3 of Plaintiff's 200 sales representatives; (2) that Defendant sold below its AVC to a total of 66 customers over 4 years; and (3) that Defendant obtained some of Plaintiff's confidential information.

While the most significant pieces of evidence Plaintiff relied upon to establish a dangerous probability of monopolization were statements of intent to become the only national yearbook company by Defendant's personnel, this evidence did not establish that Defendant realistically possessed the power

to create a monopoly. Instead, the undisputed evidence at trial indicated that throughout the period of alleged predation, Plaintiff was a large, profitable company whose sales remained constant during the relevant period of time—$100.4 million in 1994, $98.6 in 1995, $99 in 1996, $98.2 in 1997, and an estimated $102.2 in 1998. R. at 696:12–698:23. There was no evidence that any conduct by Defendant caused Plaintiff to exit any markets or product lines, lay off any employees, sell assets, or do anything to place its business in peril. The evidence at trial was insufficient to support a finding that the predatory acts on which Plaintiff relied resulted in a dangerous probability that an attempted monopoly would succeed. Rather, the evidence indicated Defendant did not control prices or exclude competition; therefore, no dangerous probability of Defendant monopolizing the market existed.

### c. Causation

Given the Court's conclusion that Plaintiff failed to establish an attempted monopolization claim, it is not necessary for the Court to reach the issue of causation. However, because the Court finds Plaintiff failed to establish causation, the Court will briefly address this issue.

■■■■ To recover under the antitrust laws, Plaintiff "must prove (1) a violation of the antitrust laws, (2) cognizable injury attributable to the violation, and (3) at least the approximate amount of the damage." *Malcolm v. Marathon Oil Co.*, 642 F.2d 845, 852 (5th Cir.), *cert. denied,* 454 U.S. 1125, 102 S.Ct. 975, 71 L.Ed.2d 113 (1981). The question of causation is generally a factual question for the jury; however, a court should enter judgment as a matter of law where the plaintiff has failed to present substantial evidence that defendant's illegal practices were a material cause of plaintiff's injuries. *Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373, 1383 (5th Cir.1979). Conclusory statements by the plaintiff, without evidentiary support, as to the fact of damage caused by the alleged antitrust violation are not sufficient. *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 704 F.2d 787, 793 (5th Cir. 1983).

■■■ In its Motion for Judgment as a Matter of Law, Defendant argues that Plaintiff's attempted monopolization claim fails because Plaintiff presented no evidence that even one of Plaintiff's customers switched to Defendant as a result of any of Defendant's conduct. Further, Defendant argues that Plaintiff presented no evidence and had no information with respect to the actual reasons why any of the 1,245 customers that switched from Plaintiff to Defendant did so. Defendant contends Plaintiff's failure to present any evidence on why customers switched is fatal to the issue of causation. Defendant argues that proof of other factors during the relevant time, including Plaintiff's quality, delivery, pricing, and other problems, caused Plaintiff's loss of customers.

The Court concludes that Plaintiff did not submit any evidence that its loss of customers was caused by anticompetitive conduct on the part of Defendant. Instead, the undisputed evidence from former customers indicated they discontinued purchasing from Plaintiff due to Plaintiff's quality and delivery problems. Since no reasonable inference of causation can be drawn from the evidence presented, Plaintiff's attempted monopolization claim fails for this reason as well.

### B. Price Discrimination in Violation of the Robinson–Patman Act

■■■■ The Supreme Court clarified the elements of a price discrimination claim in *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). First, the plaintiff must prove that the prices complained of are below an appropriate measure of its rival's costs. *Id.* at 222–23, 113 S.Ct. 2578. Here, the relevant cost measure is AVC. *Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 99 n. 4 (5th Cir.), *cert. denied,* 486 U.S. 1023, 108 S.Ct. 1996, 100 L.Ed.2d 228 (1988). The second element of a price discrimination claim requires the plaintiff to demonstrate that the competitor had a reasonable prospect of recouping its investment in below-cost prices. *Brooke Group,* 509 U.S. at 224, 113 S.Ct. 2578. "For recoupment to occur, below-cost pricing must be capable, as a threshold matter, of producing the intended

effects on the firm's rivals, whether driving them from the market, or ... causing them to raise their prices to supracompetitive levels within a disciplined oligopoly." *Id.* at 225, 113 S.Ct. 2578. "The inquiry is whether, given the aggregate losses caused by the below-cost pricing, the intended target would likely succumb." *Id.*

The Court concludes that Plaintiff's price discrimination claim fails for the same reasons stated above in the predatory pricing discussion. Therefore, Plaintiff is unable to support the jury's finding of price discrimination and judgment as a matter of law should be granted for Defendant on this claim.

### C. Tortious Interference

#### 1. Applicable Law

Under Texas law, a claim of tortious interference with an existing contract requires: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 210 (Tex.1996).

#### 2. Plaintiff's Claims

At trial, Plaintiff asserted two types of tortious interference claims. First, Plaintiff claimed that Defendant intentionally interfered with Plaintiff's contracts with its customers by inducing customers to break multi-year contracts with Plaintiff. Second, Plaintiff claimed that Defendant interfered with three of the contracts Plaintiff had with its sales representatives. The jury found that Defendant did not tortiously interfere with contracts between Plaintiff and its customers; however, the jury did find that Defendant tortiously interfered with Plaintiff's contracts with its sales representatives, Graffam and the DeFalcos.

#### 3. Defendant's Motion

Defendant argues that the jury's finding of tortious interference is not supported by sufficient evidence. First, regarding Graffam, Defendant argues that a tortious interference claim fails because Plaintiff failed to offer any evidence (1) indicating what Graffam's contractual obligations to Plaintiff were or how they may have been breached; (2) concerning why Graffam left Plaintiff's employ and went to Defendant; or (3) showing that Defendant induced Graffam to switch to Defendant. Next, concerning the DeFalcos, Defendant argues that the undisputed evidence showed that the DeFalcos had a clear right to leave Plaintiff's employ and that the DeFalcos initiated contact with Defendant regarding possible employment opportunities. Further, Defendant contends that the undisputed testimony from Mr. DeFalco showed that he left Plaintiff because of severe quality and delivery problems at Plaintiff and due to the significant decrease in pay that Mr. DeFalco was going to experience. Additionally, the evidence indicated that Defendant did nothing to induce the DeFalcos to violate their non-solicitation or confidentiality obligations to Plaintiff. Finally, Defendant argues that Plaintiff failed to provide sufficient evidence of causation and damages to support this claim. Plaintiff failed to respond.

#### 4. Court's Analysis

After reviewing the record, the Court finds no evidence of a willful or intentional act of interference with a contract Plaintiff may have had with Graffam or the DeFalcos. Moreover, the Court finds that Plaintiff failed to offer evidence to support a finding that Defendant's alleged conduct was a proximate cause of Plaintiff's damages. Based upon this lack of evidence, a jury could not have reasonably found that Defendant tortiously interfered with Plaintiff's contracts with Graffam or the DeFalcos; therefore, judgment as a matter of law should be granted to Defendant on this claim.

### D. Breach of Fiduciary Duty Claims

At trial, Plaintiff asserted two fiduciary duty claims. Plaintiff claimed that certain of its former employees breached their fiduciary duties and duties of loyalty to Plaintiff and that Defendant was a knowing participant in such conduct. Additionally, Plaintiff contended that Defendant conspired with Plaintiff's former employees to breach these

duties. The jury found for Plaintiff on both claims.

### 1. Defendant's Motion

While Defendant supports its Motion for Judgment as a Matter of Law on Plaintiff's breach of fiduciary duty claims on several bases, the Court finds that Defendant's argument that Plaintiff failed to prove causation is dispositive of this claim. Defendant indicates that Plaintiff's only attempt at quantification of damages relating to acquisition of confidential information was based upon the testimony of one of Plaintiff's expert accountants, David Lasater ("Lasater"). Lasater testified that if the jury concluded that Plaintiff was injured by the disclosure of confidential information, then damages should be valued by Defendant's increase in market share percentages and the earnings associated with those market share percentages. R. at 864:8–865:21. Lasater concluded that "to the extent that the information is used to obtain market share, then the value of each market share point would be the [resulting damage]." R. at 865:18–20. Defendant argues that Plaintiff presented no evidence by which a reasonable jury could conclude that Defendant gained any business from Plaintiff or any increase in market share as a result of Defendant's use of any confidential information.

### 2. Plaintiff's Response

Plaintiff contends that in this area, the law encourages a flexible approach to damages and allows the jury to determine damages based on the testimony offered by Lasater. In support of its position, Plaintiff cites *American Precision Vibrator Co. v. National Air Vibrator Co.*, 764 S.W.2d 274 (Tex.App.—Houston [1st Dist.] 1988, no writ), *Molex, Inc. v. Nolen*, 759 F.2d 474 (5th Cir.1985), and *University Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d 518 (5th Cir.1974). Each of these cases addresses the valuation of damages in an action by a former employer against a former employee for misappropriation of trade secrets and confidential information. In *American Precision*, the court of appeals upheld the jury's award of damages, which was valued by the loss sustained by the party injured or the benefit received by the infringer. *American Precision*, 764 S.W.2d at 279. In *Molex* and *University Computing*, the Fifth Circuit explained that damages due to misappropriation of confidential information or trade secrets can be awarded based on the reasonable royalty measure of damages, which stated simply is a percentage of sales or profits. *See Molex*, 759 F.2d at 479; *University Computing*, 504 F.2d at 537.

### 3. Court's Analysis

While the Court agrees with Plaintiff that the facts of this case required a flexible approach to the measurement of damages, it does not excuse the need for Plaintiff to offer evidence that the information at issue was used by Defendant to obtain market share. Lasater even recognized that his damage benchmark was useful "to the extent that the information is used to obtain market share …" R. at 865:18–20. Plaintiff's experts testified as to the number of customers that Plaintiff lost; however, no expert was able to testify as to why Plaintiff lost any customers. In the absence of any evidence on which a reasonable jury could find that Defendant increased its market share or gained any business from Plaintiff as a result of any use of Plaintiff's confidential information, Plaintiff failed to prove causation. Therefore, judgment as a matter of law should be granted in favor of Defendant on these claims.

### E. Unfair Competition

 To establish "a claim for unfair competition under Texas law, the plaintiff must prove that the defendant committed a separate unlawful act that, in addition to being unlawful, improperly interfered with the plaintiff's ability to conduct his business." *Continental Airlines, Inc. v. American Airlines, Inc.*, 824 F.Supp. 689, 694 (S.D.Tex. 1993) (citations omitted). Plaintiff based its unfair competition claim on what has been previously referred to and discussed as "sham pricing." Plaintiff argued that Defendant quoted discounted prices to Plaintiff's customers for the purpose of inducing those customers to switch to Defendant's business

and that Defendant intended to charge higher prices once the customer switched. The jury found in favor of Plaintiff on this claim.

For the same reasons discussed above concerning "sham pricing" or "upgrading," the Court finds that judgment as a matter of law on Plaintiff's unfair competition claim should be granted in favor of Defendant. The record is devoid of evidence that Defendant misrepresented what customers would receive under original contracts or of evidence that Defendant fraudulently entered contracts.

### Conclusion

For the foregoing reasons, the Court finds that judgment as a matter of law should be granted in Defendant's favor on all of Plaintiff's claims.

IT IS SO ORDERED.